## CIRCUIT COURT OF THE CITY OF RICHMOND

Donna Seay

v.

Grace Jefferson Home et al.

February 25, 1992

Case No. LT–3511–4

BY JUDGE RANDALL G. JOHNSON

Plaintiff brings this action against Grace Jefferson Home (the "Home"), where she formerly worked, five general partners of the Home, and one of the Home's employees. The motion for judgment contains two counts. Count I alleges that defendants, with the exception of defendant Darlene Short, the employee, wrongfully discharged plaintiff from her employment with the Home. Count II alleges that defendant Darlene Short made false, defamatory, slanderous, and insulting remarks concerning plaintiff to prospective employers of plaintiff after plaintiff's termination from the Home. Defendants, again with the exception of Darlene Short, have demurred and filed a motion for summary judgment.[1] Both the demurrer and motion for summary judgment are directed at Count I only and are based on defendants' contention that Virginia's "employment-at-will" doctrine precludes plaintiff's claim of unlawful discharge.

Grace Jefferson Home is a residential care facility for adults and is licensed by the Commonwealth as a home for adults. The Home hired plaintiff as an assistant administrator in March, 1991. During her employment, plaintiff observed what she considered was abusive treatment of Home residents by Rose Jones, one of the Home's

---

[1] As used in the remainder of this opinion, the term "defendants" refers to all of the named defendants except Darlene Short.

356

nurse's assistants. In fact, plaintiff witnessed "continual violations of patients' rights" by Rose Jones and reported those violations to defendants. Paragraph 25 of the Motion for Judgment. In addition, Fleming Rose, an "inspector of licensed adult homes for the Commonwealth of Virginia," after receiving an anonymous telephone call regarding Rose Jones's conduct, conducted an investigation at the Home.[2] Plaintiff cooperated with that investigation, providing information to the investigator and meeting with him on June 28, 1991. On June 29, she was terminated. Her letter of termination, dated June 28, 1991, the same day she met with the state investigator, stated that the partners decided "to abolish the position of Assistant Administrator effective July 1, 1991." Plaintiff contends, however, that such reason was a pretext and that she was actually terminated because she reported Rose Jones's conduct to defendants and to the state inspector and because she cooperated in the state inspector's investigation. Plaintiff further claims that such action by defendants is in violation of public policy and is therefore actionable at law.

As already noted, defendants' demurrer and motion for summary judgment challenge the viability of plaintiff's cause of action in light of Virginia's employment-at-will doctrine:

> Virginia adheres to the common law rule that when the intended duration of a contract for the rendition of services cannot be determined by fair inference from the terms of the contract, then either party is ordinarily at liberty to terminate the contract at will, upon giving the other party reasonable notice.

*Miller v. SEVAMP, Inc.*, 234 Va. 462, 465, 362 S.E.2d 915 (1987).

Moreover, while conceding that a narrow, "public-policy" exception to the at-will doctrine was recognized in *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985), defendants insist that such exception does not apply to this case. Specifically, defendants state that "[t]here is no statute recognizing that employees who cooperate with a Social Services investigator are not to be terminated, nor has the Supreme Court recognized such an exception to

---

[2] Va. Code Section 63.1–177 authorizes the Commissioner of Social Services or his representatives to "inspect" all facilities of adult home applicants and licensees. Apparently, Mr. Rose is an inspector under that section.

the at-will doctrine." Memorandum in Support of Defendants' Demurrer and Motion for Summary Judgment, at 5. I conclude that defendants have completely misread the holdings of *Miller* and *Bowman* and that a proper reading of those cases makes it clear that plaintiff has stated a viable cause of action here.

In *Bowman v. State Bank of Keysville*, plaintiffs were employees of the defendant bank and also owned stock in the bank. Prior to February 8, 1979, the bank's management commenced negotiations with officials of a certain corporation which culminated in the execution of an agreement providing for merger of the bank into a subsidiary of the corporation and conversion of each share of common stock of the bank into 25 shares of the corporation's common stock. A special meeting of shareholders was scheduled for June 26, 1979, to vote on the merger. The bank's board of directors had a proxy statement prepared and mailed to each stockholder of record. The plaintiffs alleged that the proxy statement was false and misleading, in violation of federal securities laws and laws of the Commonwealth. The plaintiffs also alleged that the bank solicited proxies in a manner that violated state and federal securities laws.

The defendants knew that there was opposition to the merger and that the vote of the stockholders would be extremely close. One of the bank's directors told one of the plaintiffs that if she voted against the merger and the merger failed, she would be terminated. If the merger was approved, she was told that her negative vote would have a definite adverse effect on her job. The same director told the other plaintiff that if she voted against the merger, she would be fired whether or not the merger occurred. Both plaintiffs executed their proxy cards in favor of the merger against their will, under duress, and out of fear of losing their jobs. The final vote of the shareholders was sufficient to approve the merger, but by a lesser margin than the number of shares voted by plaintiffs.

Two days after the vote, plaintiffs wrote a joint letter to the bank's president stating that their proxies were invalid, illegally obtained, improper, and null and void. Accordingly, they claimed, less than the required number of votes necessary for merger were cast. The board then abandoned the merger, with the plaintiffs contending that it was abandoned because the defendants feared that their illegal activities would be discovered. Six days later, the plaintiffs were fired, and each sued the bank, its directors, and a vice president of the corpora-

tion involved in the proposed merger, for unlawful discharge. Defendants demurred to the motions for judgment, and the trial court granted the demurrers. The Supreme Court reversed.

In remanding the cases for trial, the *Bowman* court was careful not to overturn Virginia's long-standing adherence to the employment-at-will doctrine. Still, an exception was recognized. Specifically, the court stated:

> Virginia has not deviated from the common law doctrine of employment-at-will set forth in the *Stonega Coal* case, *supra* . . . . And we do not alter the traditional rule today. Nonetheless, the rule is not absolute. The unique facts of these cases require us to apply one of the recognized exceptions to the rule of terminability.
>
> The courts of at least 20 states have granted exceptions to the strict application of the doctrine in favor of at-will employees who claim to have been discharged in violation of an established public policy. *See, e.g., Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980) (at-will employee fired in retaliation for his insistence that his employer comply with state laws relating to food labelling); *Nees v. Hocks,* 272 Or. 210, 536 P.2d 512 (1979) (employee fired for refusing employer's request to ask for excuse from jury duty); *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733 (Tex. 1985) (employee discharged for refusal to perform an illegal act); *Harless v. First National Bank in Fairmont,* 246 S.E.2d 270 (W. Va. 1978) (bank employees discharged in retaliation for his efforts to require employer to comply with state and federal consumer credit protection laws).

229 Va. at 539–40 (footnote and citations in first paragraph omitted). The *"Stonega Coal* case" referred to in the quote is *Stonega Coal and Coke Co. v. Louisville and Nashville R.R. Co.,* 106 Va. 223, 55 S.E. 551 (1906).

Concluding that the public policy of Virginia requires that stockholders be allowed to vote their stock without fear of reprisal from their employers, the Court held that the plaintiffs had stated causes of action and would be entitled to judgment if their allegations were proved. *Id.*

Then, in *Miller v. SEVAMP, Inc., supra,* the Court amplified its holding in *Bowman* with the following comments:

> *Bowman* applied a "narrow exception to the employment-at-will rule" . . . but it fell far short of recognizing a generalized cause of action for the tort of "retaliatory discharge." Declining to follow sweeping adoption of such a cause of action in other jurisdictions, *Bowman* recognized an exception to the employment-at-will doctrine limited to discharges which violate *public* policy, that is, the policy underlying existing laws designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general. *Each of the illustrative cases from other jurisdictions cited in Bowman involved violations of public policies of that character.* 229 Va. at 539-40, 331 S.E.2d at 801. The exception we recognized was not so broad as to make actionable those discharges of at-will employees which violate only private rights or interests.

234 Va. at 467-68 (second emphasis added).

Thus, the Supreme Court in *Miller* has stated that each of the four cases from other jurisdictions cited in *Bowman* "involve[] violations of public policies of [the] character" recognized in *Bowman* as "exception[s] to the employment-at-will doctrine." Two of those cases are dispositive of defendants' demurrer and motion for summary judgment here.

In *Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980), plaintiff was employed by defendant, a producer of frozen food products, as a quality control director. In the course of his employment, plaintiff began to notice deviations from the specifications contained in the defendant's standards and labels, in that some vegetables were substandard and some meat components were underweight. These deviations meant that the defendant's products violated the express representations contained in the defendant's labeling. Such mislabeling, in turn, violated Connecticut law. In May, 1977, plaintiff communicated his observations to defendant in writing. On November 3, 1977, he was fired. He alleged that he was fired in retaliation for his efforts to ensure that the defendant's products would comply with applicable laws relating to labeling and licensing. The court held that plaintiff had stated a cause of action.

In *Harless v. First National Bank in Fairmont*, 246 S.E.2d 270 (W. Va. 1978), plaintiff was employed by the defendant bank as office manager of the consumer credit department. While in that position, plaintiff became aware that the bank, in violation of state and federal consumer credit protection laws, had intentionally and illegally overcharged customers on prepayment of their installment loans and intentionally did not make proper rebates. When he brought these matters to the attention of his supervisors, he was fired. A week later, however, he was reinstated. After his reinstatement, he expressed his concerns about the bank's illegal activities to a member of the bank's board of directors, who promised that an investigation would be made. About one month later, plaintiff was demoted. Later, after an investigation during which one of the bank's directors acknowledged that illegal practices had occurred and promised that they would stop, plaintiff was reinstated to his former position. Thereafter, plaintiff continued to cooperate with the bank's internal investigation, giving the bank's auditor certain files and informing the auditor that he, the plaintiff, had retrieved the files from wastebaskets. Within a few weeks, plaintiff was summarily fired. In that case, too, the court held that a cause of action was stated.

Here, plaintiff claims that she was fired because she brought to her employer's attention certain violations of state law and cooperated with a state inspector who was investigating those alleged violations, precisely the type of actions for which the plaintiffs were fired in *Sheets* and *Harless*, and for which the courts held that a cause of action arose. If anything, the employer's conduct here is even more egregious, since plaintiff not only complained to her employer, as was the case in *Sheets* and *Harless*, but also complained to a representative of the governmental agency charged with investigating wrongdoing of the type complained of. Indeed, Va. Code § 63.1–182.1 provides, in part:

> Section 63.1–182.1. *Rights and responsibilities of residents of homes for adults; certification of licensure.* — A. Any resident of a home for adults has the rights and responsibilities enumerated in this subsection. The operator or administrator of a home for adults shall establish written policies and procedures to ensure that, at the minimum, each person who becomes a resident of such home for adults . . . .

10. Is free from mental, emotional, physical, sexual, and economic abuse or exploitation; is free from forced isolation, threats or other degrading or demeaning acts against him; and his known needs are not neglected or ignored by personnel of the home;

11. Is treated with courtesy, respect, and consideration as a person of worth, sensitivity, and dignity . . . .

Because Virginia's public policy as enunciated in the above statute is entitled to at least as much dignity as Connecticut's labeling laws, West Virginia's credit protection laws, and Virginia's own corporate stockholders laws; and because the allegations of the motion for judgment must, at this point, be taken as true (*Bowman*, at 536), I hold that Count I of the motion for judgment states a cause of action for wrongful discharge. Accordingly, defendants' demurrer is overruled, and their motion for summary judgment is denied.