Present: Carrico, C.J., Compton, Stephenson, Lacy, Hassell, and Keenan, JJ., and Whiting, Senior Justice

LAWRENCE CHRYSLER PLYMOUTH CORPORATION

OPINION BY JUSTICE LEROY R. HASSELL, SR.

v.   Record No. 950568        January 12, 1996

OKEY H. BROOKS, JR.

FROM THE CIRCUIT COURT OF HENRICO COUNTY
George F. Tidey, Judge

In this appeal, we consider whether a former employee at-will has a cause of action for wrongful discharge against his former employer.

Okey H. Brooks, Jr., filed his motion for judgment against Lawrence Chrysler Plymouth Corporation.  Brooks alleged that he was fired by Lawrence Chrysler because he refused to perform certain repairs on a car and that his termination violated the public policy of this Commonwealth. Lawrence Chrysler repeatedly argued in the trial court that Brooks does not have a cause of action for wrongful discharge because he was an employee at-will, and his termination did not contravene any enunciated public policy of Virginia.

The trial court rejected Lawrence Chrysler's assertions, and a jury returned a verdict of $90,000 in favor of Brooks.  The trial court required the plaintiff to remit a part of his recovery, reduced the verdict to $50,000, and entered a judgment thereon.  Code § 8.01-383.1. We awarded Lawrence Chrysler an appeal.

We will review the evidence and all reasonable inferences arising therefrom in the light most favorable to Brooks, who comes to this Court armed with a jury verdict

confirmed by the trial court.  Brooks was employed as a body shop repairman for Lawrence Chrysler.  Lawrence Chrysler relied upon Brooks to repair cars in a safe manner.

In March 1992, Lawrence Chrysler's body shop manager, Glenn Fowlkes, requested that Brooks repair a car that had sustained rear end damage.  Fowlkes directed Brooks to repair the car by utilizing a procedure described as "clipping" or "sectioning."  Brooks described his conversation with Fowlkes as follows:

> [Glenn Fowlkes] asked me to cut the car in half and -- which the short term they call is clipping.  Cut it in half through the floors, through the rocker panel and through the windshield posts.  Roll away that half and go to the junkyard and get another half and put to that front part and try to weld it together.

Brooks believed that this method of repair was unsafe.

Brooks testified:

> [W]hat they [were] asking me to do was cut the car in half and cut all your major panels and all the floor panels, in which the floor panels have all your stress conductors.  They are crush points designed in this car to crush if this car is wrecked.  If it's hit again, if I had repaired it the way I was asked, I would be destroying all that area.

Lawrence Chrysler's general manager fired Brooks because he refused to repair the car as instructed.[*]

Lawrence Chrysler asserts that Brooks, who admits he is an employee at-will, does not have a legally cognizable cause of action against it.  Brooks contends that even

---

[*]Lawrence Chrysler vigorously disputed, at trial, that this method of repair is unsafe.  Lawrence Chrysler presented evidence that the "sectioning" procedure is considered a safe practice in the automotive repair industry.

though he is an employee at-will, Lawrence Chrysler wrongfully discharged him in violation of Virginia's public policy and that "the public policy of Virginia need not be found in an express statutory command." We disagree with Brooks.

Virginia strongly adheres to the common-law employment-at-will doctrine. We have repeatedly stated:

> "Virginia adheres to the common-law rule that when the intended duration of a contract for the rendition of services cannot be determined by fair inference from the terms of the contract, then either party is ordinarily at liberty to terminate the contract at will, upon giving the other party reasonable notice.
>
> An employee is ordinarily at liberty to leave his employment for any reason or for no reason, upon giving reasonable notice, without incurring liability to his employer. Notions of fundamental fairness underlie the concept of mutuality which extends a corresponding freedom to the employer."

Lockhart v. Commonwealth Education Systems, 247 Va. 98, 102, 439 S.E.2d 328, 330 (1994) (quoting Miller v. SEVAMP, Inc., 234 Va. 462, 465, 362 S.E.2d 915, 916-17 (1987)); accord Bowman v. State Bank of Keysville, 229 Va. 534, 535, 331 S.E.2d 797, 798 (1985); Stonega Coal and Coke Co. v. Louisville & Nashville R.R. Co., 106 Va. 223, 226, 55 S.E. 551, 552 (1906).

This rule is not absolute, and we have recognized certain very narrow exceptions. In Bowman v. State Bank of Keysville, supra, we permitted at-will employees of a bank to prosecute causes of action for wrongful discharge against their former employer, State Bank of Keysville. The Bank allegedly fired the employees, who owned shares of the Bank's common stock, because the employees ultimately failed

to vote in favor of the Bank's proposed merger.  We held

that the employees had pled valid causes of action in tort

for improper discharge from employment.  The alleged

discharges violated the public policy of the Commonwealth as

enunciated in former Code § 13.1-32, now Code § 13.1-662,

which conferred upon the employees as stockholders the right

to vote.  We stated:

> Because the right conferred by [Code § 13.1-662]
> is in furtherance of established public policy,
> the employer may not lawfully use the threat of
> discharge of an at-will employee as a device to
> control the otherwise unfettered discretion of a
> shareholder to vote freely his or her stock in the
> corporation.

Bowman, 229 Va. at 540, 331 S.E.2d at 801.

> In Miller v. SEVAMP, Inc., supra, we observed that
> Bowman recognized an exception to the employment-
> at-will doctrine limited to discharges which
> violate public policy, that is, the policy
> underlying existing laws designed to protect the
> property rights, personal freedoms, health,
> safety, or welfare of the people in general. . . .
>  The exception we recognized was not so broad as
> to make actionable those discharges of at-will
> employees which violate only private rights or
> interests.

234 Va. at 468, 362 S.E.2d at 918.

In Lockhart v. Commonwealth Education Systems, supra,

we reiterated that even though we strongly adhere to the

employment-at-will doctrine, there are narrow exceptions to

that doctrine.  There, we permitted two former employees,

who alleged that they had been terminated because of their

race or gender, to prosecute causes of action against their

respective former employers.  We emphasized in Lockhart that

the former employers' actions, if proven, would have been

violative of Virginia's public policy against race and

gender discrimination as enunciated in Code § 2.1-715. That statute, which is a part of the Virginia Human Rights Act, states that it is the policy of the Commonwealth of Virginia to "safeguard all individuals within the Commonwealth from unlawful discrimination" because of, inter alia, race and gender.

Brooks asserts, on brief, that "[t]o repair a car in such a manner as was requested in this case is an obvious violation of both statutory and common law duties, including duties under the Consumer Protection laws, the Automobile Salvage laws (Virginia Code §§ 46.2-1600 et seq.), and common law duties of the dealership concerning the exercise of due care." We simply find no language in Code §§ 46.2-1600 through -1610 (which govern salvage, nonrepairable, and rebuilt vehicles) that supports Brooks' position. More telling, Brooks does not specify what precise statute that Lawrence Chrysler purportedly contravened.

In Bowman and Lockhart, the plaintiffs, who were permitted to pursue causes of action against their former employers, identified specific Virginia statutes in which the General Assembly had established public policies that the former employers had contravened. Unlike the plaintiffs in Bowman and Lockhart, Brooks does not have a cause of action for wrongful discharge because he is unable to identify any Virginia statute establishing a public policy that Lawrence Chrysler violated. We also reject Brooks' attempt to expand the narrow exception we recognized in Bowman by relying upon so-called "common law duties of the

dealership."

Accordingly, we will reverse the judgment of the trial court and enter final judgment here on behalf of Lawrence Chrysler.

<u>Reversed and final judgment</u>.