## CIRCUIT COURT OF THE CITY OF RICHMOND

Anthony Wilson, Jr.,
Erwin Lacy, and
Randall Evans

    v.

Continental Cablevision
of Richmond, Inc.

August 1, 1996

Case No. ML-4331

BY JUDGE JAMES B. WILKINSON

The plaintiffs filed a Motion for Judgment against Continental Cablevision, their former employer, for wrongful termination and tortious interference with contractual relations. All three of the plaintiffs are African-Americans who were terminated from their positions as service technicians with the defendant.

In their Motion for Judgment and Amended Motion for Judgment, they allege that their terminations were the product of racial discrimination and that the defendant interfered with their pursuit of other employment opportunities. According to the pleadings, the plaintiffs were all service department employees of the defendant Cablevision in March, 1995. On March 27, 1995, the plaintiffs were told they were being fired for extending their lunch hour and for falsifying company documents.

The plaintiffs allege that white service technicians had only been reprimanded when taking too long on their lunch break and that the falsifying documents charge was merely pretextual in nature. Plaintiff's Amended Motion for Judgment, page 3, ¶ 14, and page 5, ¶ 28.

Later, plaintiffs allege, Randall Evans and Anthony Wilson sought employment with another cable company, A-1 Communications. According to plaintiff's Motion for Judgment, "a sizeable portion of A-1's revenues

are derived from performing services for Continental on a contractual basis." Plaintiff's Amended Motion for Judgment, page 5, ¶ 29. A-1's president Jimmy Adams told Evans that he and Wilson could begin work the next Monday, but Adams later rescinded because "Continental did not want the two of them working on projects involving Continental because they had been fired by Continental." *Id.* at ¶ 33-35.

The defendant demurred to the Motion for Judgment based on two points issues: (a) that the 1995 amendments to the Virginia Human Rights Act prevent the defendant from pursuing a wrongful discharge claim under the Act; and (b) that the tortious interference claim should fail because the plaintiffs failed to properly plead the claim in their Motion for Judgment. The court heard argument and took the issues under advisement.

### Issues

(1) Whether plaintiffs have a viable cause of action for wrongful discharge; and (2) whether the plaintiff properly pleaded tortious interference with contractual relations claim.

### Discussion of Issue One

Virginia still adheres to the employment-at-will doctrine, which gives employers and employees the opportunity to terminate at will an open-ended contract for services, so long as reasonable notice of the intention to terminate is given. *Stonega Coal and Coke Co. v. Louisville & N. R.R. Co.*, 106 Va. 223 (1906); *accord Bowman v. State Bank of Keysville*, 229 Va. 534 (1985); *Miller v. SEVAMP, Inc.*, 234 Va. 462 (1987); *Lawrence Chrysler Plymouth Corp. v. Brooks*, 251 Va. 94, 465 S.E.2d 806 (1996).

In 1985, the Virginia Supreme Court recognized an exception to the employment-at-will doctrine, which is available when the termination was made in violation of public policy. *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985).

The Virginia Human Rights Act was enacted by the General Assembly in 1987. The Act announced the following public policy of the Commonwealth:

> 1. To safeguard all individuals within the Commonwealth form unlawful discrimination because of race, color, religion, national origin, sex, age, marital status or disability, in places of public accommodation, including educational institutions and in real estate transactions; in employment; to preserve the public safety, health and general welfare; and to further the interests,

rights and privileges of individuals within the Commonwealth; and

2. To protect citizens of the Commonwealth against unfounded charges of unlawful discrimination.

Virginia Code § 2.1-715. The Act did not, however, create any new causes of action under its authority. In fact, it specifically stated that the policies of the Act should not be construed to allow tort actions instead of or in addition to existing statutory actions. Va. Code Ann. § 2.1-725 (as codified, Michie 1987). In other words, the statute proclaimed the public policy of Virginia, but stopped short of creating an independent cause of . action when such public policies are violated.

In 1994, however, the Virginia Supreme Court validated the exception for public policy violations to the employment-at-will doctrine found in *Bowman. Lockhart v. Commonwealth Education Systems*, 247 Va. 98 (1994), stated that the narrow exception recognized in *Bowman* included instances where employees are terminated because of discrimination based upon gender or race. *Id.* at 106.

In *Lockhart*, the plaintiff claimed that her demotion and eventual termination from employment with Commonwealth College was racially motivated. The Supreme Court held that her pursuit of a common-law tort action for wrongful discharge was proper under *Bowman. Id.* The dissent in that case noted that the holding ran counter to the language of the Virginia Human Rights Act and was in derogation of Virginia's employment-at-will doctrine. *Id.* at 107.

The Virginia General Assembly took further action on the issue the year following *Lockhart*. The Virginia Human Rights Act was amended, effective July 1, 1995, to create a very narrow cause of action under the Act. This cause of action, according to the amendments, is available only to those individuals who are wrongfully discharged by employers who have more than five but less than fifteen employees. Va. Code Ann. § 2.1-725(B) (Michie 1995).

The amendments (hereinafter "*Lockhart* amendments") further explicitly proclaim that all other causes of action based upon the public policies of Virginia "shall be *exclusively limited* to those actions, procedures and remedies, if any, afforded by applicable federal or state civil rights statutes or local ordinances." Va. Code Ann. § 2.1-725(D) (Michie 1995) (emphasis added).

Now arises the question of whether the *Lockhart* amendments apply to the case at bar. The cause of action for wrongful termination arose when

the plaintiffs were terminated in March, 1995. The amendments came into effect on July 1, 1995. The defense argues that the amendments are remedial in nature and should be applied retroactively.

In *Duffy v. Hartsock*, 187 Va. 406 (1948), the Virginia Supreme Court declared the general rule as follows:

> Retrospective laws are not favored, and a statute is always to be construed as operating prospectively, unless a contrary intent is manifest; but the legislature may, in its discretion, pass retrospective and curative laws provided they do not partake of the nature of what are technically called *ex post facto* laws, and do not impair the obligation of contracts, or disturb vested rights; and provided, further, they are of such nature as the legislature might have passed in the first instance to act prospectively.

*Id.* at 419 (emphasis in original) (*citing with approval Whitlock v. Hawkins*, 105 Va. 242 (1906). Additionally, in *Shiflet v. Eller*, 228 Va. 115 (1984), the Supreme Court examined the retrospective application of a law which affects a vested right and determined that the statute could not be applied in any way prospectively. *Id.* at 121.

In order for a statute to apply retroactively, it must (1) be procedural in nature and affect the remedy only, disturbing no substantive or vested rights, and also (2) contain an expression of retrospective intent. *Buenson Division v. McCauley*, 221 Va. 430, 432-35 (1980); *Allen v. Mottley Const. Co.*, 160 Va. 875, 889 (1933).

The *Lockhart* amendments created a narrow cause of action and defeated all others except those already existing under other laws. It may be true, as the defense argues, that the legislature created the amendments in response to the decision in *Lockhart* and in an attempt to preclude common law actions based on the Virginia Human Rights Act. The legislature did not, however, explicitly state an intent for the amendments to apply retroactively.[1]

---

[1] When the legislature has intended retroactive effect for a statute, it has done so in explicit terms. For example, a 1966 amendment to Code § 65.1-49 contained the following language: "The provisions of this section, as amended, shall be applicable to occupational diseases contracted *before* and after July 1, 1966." *Foster v. Smithfield Packing Co.*, 10 Va. App. 144 (1990) (emphasis in original) (footnote omitted). The court finds no such explicit language in the Lockhart amendments which would evidence retroactive intent.

The defense contends that because the word "any" is found in the language of the statute, then we must interpret the unrestrictive modifier to imply retroactive intent. We decline to accept this leap in logic. As the Virginia Supreme Court has noted in determining legislative intent, the plain, obvious, and rational meaning of a statute is always preferred over a curious, narrow, or strained construction. *Turner v. Commonwealth*, 226 Va. 456, 459 (1983). If the legislature had intended such application, it could have so stated.

Moreover, the amendments affect more than procedure because causes of action are created and negated by its enactment. The Supreme Court in *Shiflet v. Eller* stated that substantive rights are addressed in statutes which create duties, rights, or obligations. 228 Va. 115, 120 (1984). Therefore, it is more than procedural in nature and should not be applied retroactively.

The cause of action in this case arose from facts occurring prior to the effective date of the amendment, and because the court believes that the amendments affect vested rights, they do not apply to this case. It is the opinion of this court that the 1995 *Lockhart* amendments to the Virginia Human Rights Act apply only to those cases which arise from facts occurring after July 1, 1995.

This court now analyzes whether the plaintiffs have stated a common law claim for wrongful termination under the Virginia Human Rights Act prior to the amendments. Despite recent decisions from the Richmond Circuit Court, Division I, this court will not turn a blind eye to the language of our Code and declines to find a common law tort action for wrongful discharge under the Virginia Human Rights Act.

Again, the Virginia Human Rights Act (prior to the amendments) specifically states:

> Nothing in this chapter creates, nor shall it be construed to create, an independent or private cause of action to enforce its provisions. Nor shall the policies or provisions of this chapter be construed to allow tort actions to be instituted instead of or in addition to the current statutory actions for unlawful discrimination.

Va. Code Ann. § 2.1-725 (Michie 1987). The statute clearly negates rights of action under the Virginia Human Rights Act. Va. Code Ann. §§ 2.1-714 to 2.1-725. In other words, the Act does not invite causes of action under its policy. On the contrary, it merely states the public policy of the Commonwealth and relies on other statutes as vehicles of enforcement.

Several recent cases have misstated the effect of the statute. It does not, for example, erase from the legal chalkboard the opportunity for someone to sue for wrongful termination based on racial or gender discrimination. In *Holmes v. Tiedeken*, 36 Va. Cir. 491 (1995), Judge Johnson stated:

> This court refuses to entertain the notion that the General Assembly, through statute, legislative history, or otherwise, has done anything at all to even remotely suggest that it would alter [Virginia's] public policy [against racial or gender discrimination].

*Id.* at 492. *See also Lundy v. Cole Vision Corp.*, Case No. LA-3123-1 (Richmond Circuit Court, May 20, 1996).[2] This court respectfully disagrees with Judge Johnson's interpretation of the Act's meaning. The Virginia Human Rights Act is not an attempt to alter the Commonwealth's policy against such invidious discrimination. Rather, the Act proclaims our policy against such actions and directs the victim to other statutes for enforcement.

The court further stated in *Holmes v. Tiedeken* that it did not rely on the Virginia Human Rights Act in finding a common law cause of action for wrongful termination, but rather:

> [W]e rely solely on the narrow exception that we recognized in 1985 in *Bowman*, decided two years before the enactment of the Virginia Human Rights Act.

*Id.* The court relied on a decision handed down *prior to the enactment of the Virginia Human Rights Act*, which ignores the clear language of the statute and flies in the face of the intent of the General Assembly.

The U.S. District Court for the Western District of Virginia recently issued a memorandum order in the case of *Roberts v. Wal-Mart*, Civil Action No. 95-0059-H (July 1, 1996), wherein the court examined wrongful discharge under Virginia law. That court felt compelled to follow an order issued by the Virginia Supreme Court in March, wherein a common law tort action was allowed pursuant to the Act. *Clark v. Manheim Services Corp.*, 38 Va. Cir. 479 (Va. 1996). The court evidenced its frustration in the following order:

> In response to *Lockhart*, the Virginia legislature revised the VHRA to preclude more explicitly a common law cause of ac-

---

[2] This case is printed above at page 254. [Reporter's Note]

> tion grounded in the VHRA [footnote omitted]. Despite the revised act, the Supreme Court of Virginia continues to cite *Lockhart* for the proposition that a plaintiff can bring a common law cause of action for wrongful discharge if the plaintiff ties the defendant's conduct to the violation of a public policy evidenced by a Virginia statute.

*Id.* at 4.

Contrariwise, this court feels compelled to enforce the obvious will of the legislature. It is the opinion of this court that the Virginia Human Rights Act, both before and after the 1995 amendments, was intended to prevent common law tort actions for wrongful termination based on violations of public policy. This attempt to resuscitate the employment-at-will doctrine in Virginia and require victims of discrimination to proceed under existing statutes or local ordinances will finally be followed by this court.

Therefore, insofar as the plaintiffs proceed in a common law tort action under the Virginia Human Rights Act, the defendant's demurrer is sustained. However, according to the Amended Motion for Judgment, the plaintiffs also base this action for wrongful termination on violations of Va. Code Ann. § 2.1-374 and local ordinances 92-5-15 and 92-5-16 enacted pursuant to Code § 15.1-23.1.

Section 2.1-374 is also known as the Virginia Fair Employment Contracting Act, and declares Virginia's policy to eliminate all discrimination on the basis of race, color, religion, sex or national origin from the employment practices of the Commonwealth, its agencies, and government contractors. Contractor is defined in § 2.1-375 to mean "any individual, partnership, corporation or association which performs services for or supplies goods, materials or equipment to the Commonwealth or any agency thereof."

The plaintiffs' Amended Motion for Judgment alleges that the defendant corporation performs services for the agencies of the Commonwealth of Virginia, in that Continental provides cable television services for various state agencies, universities, and other instrumentalities of the Commonwealth. Therefore, the plaintiffs sufficiently plead a violation of § 2.1-374 pursuant to Continental's classification as a government contractor to withstand demurrer.

Furthermore, the plaintiffs rely on violations of city ordinances 92-5-15 and 92-8-16 to sustain an action for wrongful termination. These ordinances adopt the terms and conditions of a franchise agreement between

Continental Cablevision as Grantee and the City of Richmond. Section 8 of the franchise agreement sets out the Grantee's employment practices:

> The Grantee shall not refuse to hire, nor discharge from employment, nor discriminate against any person regarding compensation, terms, conditions or privileges of employment because of age, sex, race, color, creed or national origin . . . This condition includes, but is not limited to, the following: recruitment advertising, employment interviews, employment, rates of pay, upgrading, transfer, demotion, lay-off and termination.

Richmond, Va., §§ 92-5-15, 92-8-16 (1992). Accordingly, the plaintiffs pleaded sufficiently a violation of the conditions of the franchise agreement between the City of Richmond and Continental Cablevision to survive demurrer. The plaintiffs have a cause of action for wrongful discharge because they are able to identify a Virginia statute and Richmond ordinances establishing a public policy which Continental violated. *Lawrence Chrysler Plymouth Corp. v. Brooks*, 251 Va. 94 (1996).

Because this court finds that the plaintiffs base their Amended Motion for Judgment on existing statutory and ordinance violations, the defendant's demurrer is overruled.

### Discussion of Issue Two

The defense argues that the plaintiffs failed to properly plead their tortious interference with contractual relations claim and that Count II should consequently be dismissed.

The defendant cites *Duggin v. Adams*, 234 Va. 221 (1987), as precedent for sustaining the demurrer in this case. In the *Duggin* case, the Virginia Supreme Court concluded that the trial court erred in sustaining the demurrer because the Motion for Judgment alleged a prima facie case of tortious interference with a contract. *Id.*

In order to prove a prima facie case of tortious interference with a contract that is terminable at will, the plaintiff must allege and prove that the interference that caused the termination was intentional and that the defendant used improper methods. *Id.* at 227. *See also Chaves v. Johnson*, 230 Va. 112, 120 (1985). Improper methods may include violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship. *Duggin v. Adams,*

234 Va. at 227, *quoting Top Service Body Shop v. Allstate Ins. Co.*, 582 P.2d 1365, 1371, n. 11 (1978).

Turning to the language in Plaintiffs' Amended Motion for Judgment, Count II alleges that "Continental interfered with Wilson and Evans' prospective contract with A-1," and that Continental was "without legal right or justification" to interfere with plaintiffs' prospective contract for employment. Amended Motion for Judgment, page 8, ¶¶ 54 and 56.

A person's interest in a contract terminable-at-will is merely an expectation of future economic gain, and he has no real legal assurance that he will realize that gain. *See* Restatement (Second) of Torts § 766, Comment G (1979). Still, a terminable-at-will contract is not terminable at the will of others. *Truax v. Raich*, 239 U.S. 33, 38 (1915).

In *Hechler Chevrolet v. General Motors Corp.*, 230 Va. 396 (1985), the Virginia Supreme Court examined whether the trial court properly sustained the defendant's demurrer in an action for interference with contractual relations. The Court held that because the plaintiff's Motion for Judgment failed to allege that any improper means were used in the interference, the demurrer was properly sustained. *Id.* at 403.

In this case, the court agrees, that the plaintiffs failed to properly plead that the interference was intentional and that the alleged interferer employed an improper method. "Without legal justification" is language indicating an affirmative defense on the part of the interferer and cannot be interpreted to allege an improper means. The demurrer as to Count II in the Motion for Judgment is therefore sustained.

However, pursuant to Rule 1:8 and Va. Code Ann. § 8.01-273, the court has discretion to grant the plaintiffs leave to amend their Motion for Judgment. Accordingly, the court orders that the Plaintiffs have fifteen days from the date of the order sustaining the demurrer to amend the Tortious Interference with Contractual Relations claim.

## Conclusion

The court sustains the defendant's demurrer as to the Virginia Human Rights Act, but otherwise overrules the demurrer because the plaintiffs have sufficiently established their wrongful discharge claim under other statutes and ordinances as directed by the VHRA. The demurrer as to the tortious interference with contractual relations claim is sustained, although the plaintiffs have fifteen days to amend the Motion for Judgment on that count.