Present:  All the Justices

LISA BAILEY

OPINION BY JUSTICE LAWRENCE L. KOONTZ, JR.

v. Record No.  960530                    JANUARY 10, 1997

SCOTT-GALLAHER, INC.

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
Clifford R. Weckstein, Judge

In this appeal, we consider whether a former employee who alleged that she was terminated from her at-will employment because of her gender pled a cause of action against her former employer for wrongful discharge.

The trial court decided this case on demurrer.  Accordingly, we recite as true the material facts alleged in the motion for judgment and the fair factual inferences deducible therefrom. Palumbo v. Bennett, 242 Va. 248, 249, 409 S.E.2d 152, 152 (1991).

On June 20, 1995, Lisa Bailey filed her motion for judgment against Scott-Gallaher, Inc., a Virginia corporation.[1]  That pleading contains the following allegations of fact.  Bailey was employed by Scott-Gallaher in September, 1990.  In 1994, she became pregnant.  As a result of premature onset of labor, Bailey's physician ordered her to cease work on July 21, 1994. She was released by her physician to return to work on October 3, 1994.  Bailey promptly contacted Ronald E. Scott, Scott-Gallaher's president, to inquire "when she should return to

---

[1]Bailey asserted two claims in her motion for judgment.  The first claim, predicated upon Title VII of the federal Civil Rights Act, 42 U.S.C. §§ 2000e et seq., was voluntarily nonsuited after it was determined that Scott-Gallaher did not employ a sufficient number of employees to bring it within the operation of Title VII.

work."  Scott told Bailey that she had been terminated "because she was no longer dependable since she had delivered a child; that [her] place was at home with her child; that babies get sick sometimes and [she] would have to miss work to care for her child; and that [Scott-Gallaher] needed someone more dependable."

Bailey's motion for judgment alleges, citing Lockhart v. Commonwealth Education Systems Corp., 247 Va. 98, 439 S.E.2d 328 (1994), that Scott-Gallaher "is subject to the common law of Virginia prohibiting employment discrimination based upon sex." The pleading further alleges, citing the Virginia Human Rights Act, Code § 2.1-715, that it is the public policy of the Commonwealth to safeguard individuals from gender-based discrimination.  Finally, under the facts and law set forth above, the pleading alleges that Scott-Gallaher had, in violation of the public policy of the Commonwealth of Virginia, "(a) discriminated against Bailey with respect to the terms, conditions or privileges of her employment because of her sex; and (b) fired Bailey on account of her sex."

Scott-Gallaher filed a demurrer, asserting, inter alia, that Bailey's common law claim was not actionable because she was an employee-at-will and, therefore, terminable without need for cause.  The trial court sustained the demurrer, holding that Bailey had not stated a cognizable claim for wrongful discharge under Virginia's public policy exception to the employment-at-will doctrine.  We awarded Bailey an appeal.

Virginia strongly adheres to the common law employment-at-will doctrine.  As recently as last year, we stated:

"Virginia adheres to the common-law rule that when the intended duration of a contract for the rendition of services cannot be determined by fair inference from the terms of the contract, then either party is ordinarily at liberty to terminate the contract at will, upon giving the other party reasonable notice.

An employee is ordinarily at liberty to leave his employment for any reason or no reason, upon giving reasonable notice, without incurring liability to his employer. Notions of fundamental fairness underlie the concept of mutuality which extends a corresponding freedom to the employer."

Lawrence Chrysler Plymouth Corp. v. Brooks, 251 Va. 94, 97, 465 S.E.2d 806, 808 (1996)(quoting Miller v. SEAVAMP, Inc., 234 Va. 462, 465, 362 S.E.2d 915, 916-17 (1987)(citations omitted)).

We have also held, however, that the common law employment-at-will doctrine is not absolute, and we have recognized certain narrow public policy exceptions to this doctrine. For example, in Bowman v. State Bank of Keysville, 229 Va. 534, 540, 331 S.E.2d 797, 801 (1985), citing former Code § 13.1-32 (now Code § 13.1-662), which guarantees every shareholder the right to vote his or her stock "free of duress and intimidation," we recognized a narrow public policy exception to the employment-at-will doctrine where employee/shareholders were terminated after they complained that they had been coerced into voting for a merger. We reasoned that

[b]ecause the right conferred by [Code § 13.1-32] is in furtherance of established public policy, the employer may not lawfully use the threat of discharge of an at-will employee as a device to control the otherwise unfettered discretion of a shareholder to vote freely his or her stock in the corporation.

Id.

Subsequently, in Lockhart, supra, we permitted two former

employees who alleged that they had been terminated because of their race or gender to prosecute causes of action against their respective former employers.  In Lockhart, we stated:

> In Bowman, we recognized the plaintiffs' rights to bring actions for wrongful discharge based upon violations of Virginia's public policy that a stockholder should be permitted to exercise the right to vote stock free of duress and intimidation from corporate management.  Here, however, we are concerned with rights of even greater importance, the personal freedom to pursue employment free of discrimination based upon race or gender.  Indeed, there are few, if any, greater restrictions on personal freedoms that an employee can suffer than to be terminated because of discrimination based upon race or gender.

Id. at 104, 439 S.E.2d at 331.  We explained in Lockhart that the plaintiffs were able to pursue their common-law causes of action because their claims were within the scope of the narrow public policy exception that we applied in Bowman:

> We recognize that the Virginia Human Rights Act does not create any new causes of action.  Code § 2.1-725.  Here, we do not rely upon the Virginia Human Rights Act to create new causes of action.  Rather, we rely solely on the narrow exception that we recognized in 1985 in Bowman, decided two years before the enactment of the Virginia Human Rights Act.

Id. at 105, 439 S.E.2d at 331.

In Lockhart the former employers' alleged discriminatory acts, if proven, would have violated Virginia's strong public policy against race and gender discrimination as reflected in Code § 2.1-715, which is a part of the Virginia Human Rights Act.  That it is the strongly held public policy of this Commonwealth to protect employees against employment discrimination based upon race or gender is beyond debate or challenge.  Thus, in Lockhart we stated:

> Without question, it is the public policy of this

Commonwealth that all individuals within this Commonwealth are entitled to pursue employment free of discrimination based on race or gender. Indeed, racial or gender discrimination practiced in the work place is not only an invidious violation of the rights of the individual, but such discrimination also affects the property rights, personal freedoms, and welfare of the people in general.

Id.

Our decision last year in Lawrence Chrysler Plymouth Corp., supra, is consistent with the narrow public policy exception to the employment-at-will doctrine we have previously recognized. There, the plaintiff's claim was that he was terminated when he refused to follow the employer's directions to repair a car by utilizing an allegedly unsafe method of repair. The plaintiff, who had recovered a favorable jury verdict confirmed by the trial court, contended on appeal that even though he was an employee-at-will, his employer wrongfully discharged him in violation of Virginia's public policy and that "the public policy of Virginia need not be found in any express statutory command." 251 Va. at 96, 465 S.E.2d at 808. Distinguishing Lawrence Chrysler Plymouth Corp. from Bowman and Lockhart, we unanimously stated:

In Bowman and Lockhart, the plaintiffs, who were permitted to pursue causes of action against their former employers, identified specific Virginia statutes in which the General Assembly had established public policies that the former employers had contravened. Unlike the plaintiffs in Bowman and Lockhart, Brooks does not have a cause of action for wrongful discharge because he is unable to identify any Virginia statute establishing a public policy that Lawrence Chrysler violated.

Lawrence Chrysler Plymouth Corp., 251 Va. at 98-99, 465 S.E.2d at 809.

Guided by these settled principles, we turn now to consider

Bailey's claim.  Bailey argues that she pled a viable cause of action for gender discrimination and that the trial court erred by sustaining the demurrer.  The Attorney General of Virginia, who filed a brief amicus curiae pursuant to Rule 5:30(a)(1), also argues that Bailey pled a cause of action for gender discrimination.  Scott-Gallaher asserts that the trial court properly sustained the demurrer because Bailey failed to identify a statute which identifies a public policy that Scott-Gallaher had violated.  We disagree with Scott-Gallaher.

We are of opinion that Bailey pled a viable cause of action which clearly falls within the scope of the narrow public policy exception to the employment-at-will doctrine that we recognized in Bowman and Lockhart.  Specifically, we will apply Lockhart here because we perceive of no reason why we should overrule or retreat from our holdings in Bowman and Lockhart, and we decline Scott-Gallaher's invitation that we do so.

Bailey pled factual allegations similar to those pled by plaintiff Wright in Lockhart which, if proven true, could support a jury finding that she was discriminated against because of her gender.  Bailey's factual allegations, if proven true, would support a reasonable inference by the finder of fact that Scott-Gallaher terminated Bailey solely because of her status as a woman who is also a working mother.  Certainly, this basis for termination is a classic example of gender discrimination which is repugnant to Virginia's strong public policy.  Additionally, we noted in Lockhart that while the cause of action for wrongful termination based on gender discrimination arose independently

from the Virginia Human Rights Act, the public policy articulation in that Act satisfies our requirement in <u>Lawrence Chrysler Plymouth Corp.</u> for identifying a statutory embodiment of the public policy of the Commonwealth.

In view of our holding, we need not consider the litigants' remaining arguments. Accordingly, we will reverse the judgment of the trial court and remand this case for a trial on the merits.

<u>Reversed and remanded</u>.

JUSTICE COMPTON, with whom CHIEF JUSTICE CARRICO and JUSTICE STEPHENSON join, dissenting.

The basis of the plaintiff's so-called "common law" claim is that she has been the victim of discrimination in the workplace because of pregnancy and childbirth. The plaintiff contends, and the majority agrees, "that pregnancy discrimination is a form of sex discrimination." But "pregnancy" discrimination is not expressly prohibited by the Virginia Human Rights Act, Code §§ 2.1-714 through -725 (the Act), or any other Virginia law. Sound public policy may indeed justify legislation to prohibit the sort of conduct about which the plaintiff complains in this case. However, that public policy should be declared by the General Assembly, not four judges.

The plaintiff said in the trial court that the issue here, "simply put," is "whether a female employee's giving birth is grounds for termination of employment in Virginia." She suggested to the trial court "that disparate treatment of female employees because they have the capacity to give birth or have in

fact given birth is a quintessential expression of gender discrimination."  That contention makes interesting rhetoric, but it disregards the settled law that any narrow exception to Virginia's employment-at-will doctrine must be based on a specific Virginia statute in which the General Assembly has established a public policy that the employer has contravened. See Lawrence Chrysler Plymouth Corp. v. Brooks, 251 Va. 94, 98, 465 S.E.2d 806, 809 (1996); Miller v. SEVAMP, Inc., 234 Va. 462, 467-68, 362 S.E.2d 915, 918-19 (1987); Bowman v. State Bank of Keysville, 229 Va. 534, 540, 331 S.E.2d 797, 801 (1985).  And, as I have said, there is no Virginia statute expressly prohibiting defendant's conduct.

As pertinent, the Act declares the Commonwealth's policy to safeguard in employment all individuals "from unlawful discrimination because of race, color, religion, national origin, sex, age, marital status or disability."  Code § 2.1-715(1). Courts may construe or interpret statutory language that is "difficult to comprehend, is of doubtful import, or lacks clearness and definiteness. . . . But when statutory language is clear and unambiguous, the plain meaning and intent of the enactment will be given to it; we take the words as written to determine their meaning."  Lee-Warren v. School Bd. of Cumberland County, 241 Va. 442, 445, 403 S.E.2d 691, 692 (1991).  Neither pregnancy nor childbirth is mentioned in § 2.1-715(1), and judges should not add that language to this unambiguous statute.  Stated differently, when the legislature makes it unlawful for an employer to discriminate because of "sex," courts should not

"readily infer" that the term encompasses pregnancy or childbirth. General Elec. Co. v. Gilbert, 429 U.S. 125, 145 (1976).

Moreover, at the time the plaintiff filed her motion for judgment, the Act provided:  "Nothing in this chapter creates, nor shall it be construed to create, an independent or private cause of action to enforce its provisions.  Nor shall the policies or provisions of this chapter be construed to allow tort actions to be instituted instead of or in addition to the current statutory actions for unlawful discrimination."  Code § 2.1-725 (Repl. Vol. 1987).  Thus, even if discrimination because of pregnancy or childbirth is, by implication, the same as discrimination because of gender, the General Assembly clearly has stated that the public policies set forth in the Act may not be used as the basis for private tort actions, such as the present case.

Finally, the majority places great reliance on Lockhart v. Commonwealth Educ. Systems Corp., 247 Va. 98, 439 S.E.2d 328 (1994), and labors to harmonize it with Lawrence Chrysler Plymouth Corp. and Bowman.  The continued viability of Lockhart is doubtful.

In 1995, the General Assembly acted promptly to nullify the scope of Lockhart; the legislature extensively amended Code § 2.1-725 (Repl. Vol. 1995).  Acts 1995, ch. 838.  These amendments confirm, contrary to the majority's holding today, that the Act does not establish a Bowman-type public policy exception to Virginia's employment-at-will doctrine.

Consequently, I would affirm the judgment of the trial court.