## CIRCUIT COURT OF THE CITY OF RICHMOND

Julia H. Andrews

v.

Bon Secours-St. Mary's Hospital
of Richmond, Inc.

Case No. LC 1910-3

BY JUDGE T. J. MARKOW

October 31, 1997

This case is before the court on demurrer.

The plaintiff, Julia Andrews, was a former Registered Nurse working in the psychiatric unit of St. Mary's Hospital in Richmond, Virginia. The defendant is Bon Secours-St. Mary's Hospital of Richmond, Inc.

Andrews was scheduled to work the 7:15 a.m. to 3:15 p.m shift at St. Mary's on January 7, 1997. On that same day, the Joint Commission on Accreditation of Healthcare Organizations ("JCAHO") was scheduled to inspect the defendant's psychiatric unit as part of a hospital-wide inspection and accreditation process.

At approximately 4:00 a.m. that day, defendant admitted an adult psychotic patient ("Patient X") to the psychiatric unit. Between 8:15 a.m. and 8:30 a.m., Patient X attempted to sexually assault a restrained geriatric patient in the same unit (Patient A). Responding to the incident, Andrews attempted to follow the hospital's established procedures on such incidents. Plaintiff contends that she was prevented from adhering to this protocol by her supervisors, who feared that the JCAHO inspectors would learn of the assault. Patient A was denied food, water, and medication until the administration of a Physical Examination Rape Kit test by a Sexual Assault Nurse Examiner at 5:30 p.m.

In addition, plaintiff states that her supervisors objected to and prevented Andrews from secluding Patient X in accordance with established protocol. The assailant was instead placed on "one-to-one" observation with another nurse, once again in an attempt to deceive the JCAHO team. This method proved ineffective to control Patient X; plaintiff repeatedly intervened in order to remove him from Patient A's room. Over the objections of her supervisors (who were apparently concerned about the accreditation audit), Andrews eventually obtained permission from his treating psychiatrist to seclude Patient X.

The JCAHO inspectors inspected the defendant's psychiatric unit from approximately Noon until 12:45 p.m. on January 7, 1997. The inspectors were not informed of the assault or its aftermath.

After her shift concluded at 3:15 p.m., Plaintiff completed paperwork concerning Patient X, Patient A, and the rest of the psychiatric unit. Defendant contends that Andrews made improper alterations to the medical charts of Patients X and A at this time.

Andrews prepared two letters regarding the January 7 incident, which were delivered to defendant's Risk Management Director on January 10, 1997. The incident and these letters were the topic of meetings with defendant's attorney on January 13 and a second meeting with the Risk Management Director on January 17. After plaintiff refused to voluntarily resign in order to avoid defendant's report of her alleged charting violations to the Board of Nursing, Andrews was terminated by St. Mary's.

Plaintiff contends that her firing was in retaliation for the written and verbal objection to her employer's concealment of the attempted sexual assault. She claims that St. Mary's actions constitute wrongful termination in violation of the Commonwealth's public policy. In particular, Andrews cites six statutes and regulations to support her contentions: (1) Va. Code § 54.1-3007, "Refusal, revocation or suspension, censure or probation" by the Board of Nursing; (2) Va. Code § 32.1-2, "Finding and Purpose" of the Commonwealth's health care system; (3) Va. Code § 54.1-2906, "Hospitals and other health care institutions required to report disciplinary actions against and certain disorders of health professionals;" (4) Va. Code § 32.1-127, "Regulations" promulgated by the Board of Health to carry out the provisions of the health code; (5) Virginia Board of Nursing Regulations, Part IV, § 4.1, defining unprofessional conduct under Va. Code § 54.1-3007 to include "[a]busing, neglecting or abandoning patients or clients;" and (6) Va. Code § 18.2-460, "Obstructing Justice."

"A demurrer admits the truth of all material facts that are properly pleaded." *Bowman v. State Bank of Keysville*, 229 Va. 534, 536 (1985). Only

those grounds specifically stated in defendant's demurrer will be considered by this court. *Klein v. National Toddle House Corp.*, 210 Va. 641 (1970). St. Mary's contends that plaintiff's pleadings fail to state facts upon which relief can be granted on this wrongful discharge claim. *See* Va. Code § 8.01-273. This argument is based upon defendant's interpretation of *Bowman* and its progeny.

Virginia has adopted the common law doctrine of employment at will: if the intended duration of a services contract cannot be determined by fair inference from its terms, then either party ordinarily has the liberty to terminate the contract at will, upon giving reasonable notice to the other party. *Stonega Coal and Coke Co. v. Louisville and Nashville R.R. Co.*, 106 Va. 223, 226 (1906).

The Commonwealth now recognizes limited exceptions to this rule, beginning with *Bowman*. The Supreme Court of Virginia held that the public policy embodied in statutory rights guaranteed to the plaintiffs was sufficient foundation to support a cause of action for wrongful discharge. *Bowman*, 229 Va. at 540. This case concerned the exercise of voting rights by two employee shareholders pursuant to Va. Code § 13.1-32 (repealed 1985). The plaintiffs revoked their favorable votes for a merger, whereupon the merger was aborted, and the board retaliated by voting to terminate these at-will employees. *Id.* at 537-38. The discharge was "premised solely upon the plaintiffs' proper exercise of their protected rights as shareholders." *Id.* at 539. Underlying this statutory right is the assumption that it "shall be exercised free of duress and intimidation imposed on individual stockholders by corporate management." *Id.* at 540. Attempts to contravene this contemplated policy were viewed by the Court as unlawful.

The Court addressed the reach of the *Bowman* rule in *Miller v. SEVAMP, Inc.*, 234 Va. 462 (1987), where Justice Russell opined that there is *no* exception to the at-will employment doctrine for discharges violative of private rights or interests. The plaintiff alleged that she was terminated in retaliation for appearing as a witness at the grievance hearing of a fellow-employee. *Id.* at 464. The plaintiff's testimonial right was founded not on statute but on the defendant's internal personnel and administrative regulations. *Id.* at 468.

In addition to identifying the public/private right distinction, the *Miller* Court clarified the policy component of *Bowman*:

> *Bowman* recognized an exception to the employment-at-will doctrine limited to discharges which violate ... the [public] policy *underlying*

existing laws designed to protect the *property rights, personal freedoms, health, safety, or welfare* of the people in general.

*Id.* at 468 (emphasis added).

In *Lockhart v. Commonwealth Educ. Sys. Corp.*, 247 Va. 98 (1994), the Court addressed violations of public policy embodied in the Virginia Human Rights Act, Va. Code § 2.1-715. Justice Hassell held that plaintiffs' freedom to pursue employment free of discrimination based upon race or gender was sufficient to make out a cause of action for tortious discharge. *See also Bailey v. Scott-Gallaher, Inc.*, 253 Va. 121 (1997) (analogous to *Lockhart* in the context of wrongful termination based on pregnancy).

The importance of identifying specific statutory language to support an exception to the employment at will doctrine was the focus of *Lawrence Chrysler Plymouth Corp. v. Brooks*, 251 Va. 94 (1996). The Court held that plaintiff's failure to identify *any* Virginia statute establishing a public policy that defendant violated was fatal to his cause of action. *Id.* at 98-99. Plaintiff refused to repair a car in a dangerous manner, as instructed by his employer, which resulted in his termination. In support of his wrongful discharge claim, plaintiff generally invoked both statutory and common law duties, including the Consumer Protection laws and the Automobile Salvage laws. *Id.* at 98. No specific provisions were cited and the Court found no language in the Code to support this position. *Id.*

Throughout its memoranda, defendant makes two related arguments: (1) plaintiff must be part of the "class" of persons that the specific statute (cited by plaintiff in support of its wrongful discharge claim) was intended to benefit, and (2) plaintiff's termination must spring from the exercise of a specific statutory right in order to support a *Bowman* claim. *See, e.g., Lockhart v. Commonwealth Educ. Sys. Corp.*, 247 Va. 98 (1994); *Perry v. American Home Prods. Corp.*, 1997 U.S. Dist. LEXIS 2521 at *14 (E.D. Va. 1997) ("*Lawrence Chrysler* circumscribes *Bowman* claims to those in which an employer has contravened a *right conferred on an individual* by a specifically identified statute which enunciates a public policy"); *Bussey v. Arlington Community Residences, Inc.*, 22 Va. Cir. 100, 102 (Arlington Co. 1990) ("employee asserting a wrongful discharge as against public policy must be a *member of the class* to be protected by a public right established by a law").

Regarding the defendant's first argument, there is no authority under Virginia law which requires plaintiff to fall within a "protected class" under the statute in order to make out a *Bowman* claim. *See McBroom v. DynCorp*, 38 Va. Cir. 109 (Fairfax Co. 1995) (*Bowman* rule applies to federal as well as

state policies). Next, the *Lockhart* Court departed from *Bowman* when it declined to link the statutory foundation of plaintiff's claim (the Virginia Human Rights Act) to the creation of a new cause of action for wrongful termination. The strong public policy against discrimination based on gender or race *underlying* the Act formed the basis of the claim in *Lockhart*, not the plaintiff's membership in any statutory class or exercise of specific statutory rights. *See Bailey v. Scott-Gallaher*, 253 Va. 121, 126 (1997) (endorsing the *Lockhart* rationale); *Bradick v. Grumman Data Systems Corp.*, 254 Va. 156 (1997); *see also Seay v. Grace Jefferson Home*, 26 Va. Cir. 355 (Richmond 1992) (Policy underlying specific code provision was sufficient basis for *Bowman* claim even though statute did not grant express right to plaintiff).

This court finds that the broad interpretation of the *Bowman* rule found in *Lockhart* does not control the instant case. A synthesis of *Bowman* and *Lawrence Chrysler* demonstrates that an employer may not terminate an employee based upon his exercise of some right *or* where the employee has complied with an official mandate (e.g., a statute or administrative regulation). In the instant case, plaintiff has not alleged that the personal exercise of a statutory right was the basis for her termination. Rather, she contends that she was fired in retaliation for her written critiques of the defendant's irregular patient care directives, which she implies was required by her ethical and legal obligations as a registered nurse. Unlike *Bowman* and its progeny, plaintiff's claim is based on her assertion that she was fired for following an official mandate, not that she was exercising an officially recognized right.

Plaintiff suggests that the policy underlying official mandates should be broadly construed as was the public policy in *Lockhart*. The court disagrees.

Statutes which are enacted to create and/or protect rights are generally of a remedial nature, and under established principles of construction such statutes are construed liberally to achieve the statutory objectives. Statutes which mandate conduct, are inherently punitive. Consequently, they are generally construed narrowly. A helpful way to test whether the statutes cited by plaintiff are applicable is to ask "if plaintiff failed to perform those acts for which she claims to have been fired, could she have been made to suffer some penalty imposed by an agency of government?" If so, her performance of the mandated conduct cannot be the basis of her termination. The statutes and regulation which plaintiff cites in support of her public policy argument must be construed narrowly in determining whether they support a cause of action for wrongful termination.

Plaintiff first cites Va. Code Ann. § 54.1-3007. She contends that Va. Code § 54.1-3007 subjects her to disciplinary action by the State Board of Nursing

for "unprofessional conduct" and for "practicing in a manner contrary to the standards of ethics or in such a manner as to make the practice a danger to the health and welfare of patients or to the public." *Id.* § 54.1-3007(2), (5). The terms of this statute confer authority upon the Board of Nursing to suspend, revoke, censure or reprimand any licensee for such violations. While this section does not confer a "right" upon the class of nurses subject to these disciplinary measures, it indicates that nurses are generally bound by a duty to obey the legal care obligations and professional ethics applicable to their profession. The legal and ethical obligations of the nursing profession are enacted for the protection of the general public; these obligations are distinct from the "private rights and interests" contained in internal personnel and administrative manuals which were rejected by the Court in *Miller v. SEVAMP, Inc.*, 234 Va. 462, 468 (1987). It is these underlying duties that plaintiff says motivated the patient care disagreement with her superiors and compelled her to write two letters to the defendant's Risk Management Director. However, plaintiff has failed to allege facts sufficient for this court to find that she was discharged for adhering to a specific statutory or administrative obligation related to § 54.1-3007. The apparent reason for her firing was her written reports after the incidents occurred. Plaintiff has failed to cite any authority for the proposition that her failure to make such reports would have led to disciplinary conduct by the Board of Nursing. As she may be able to identify such conduct, she will be granted leave to amend on this basis.

Second, plaintiff cites Va. Code § 32.1-2 for the proposition that "[t]he General Assembly finds that protection, improvement, and preservation of the public health and of the environment are essential to the general welfare of the citizens of the Commonwealth." At first blush, plaintiff's actions in seeking to protect the attempted sexual assault victim and isolate her assailant would appear to be in furtherance of the Commonwealth's general policy to protect and preserve the public health. However, § 32.1-2 serves as a preamble to Chapter 1 of the health code, which contains a variety of administrative and procedural directives regarding health care management. None of these provisions contemplates the issue at hand, on-site protocol for dealing with a patient's sexual assault and the interaction of psychotic and geriatric patients. If plaintiff were correct, there is little conduct that would not fit under this broad articulation of policy. It is far too great a stretch to extend the *Bowman* rule in this situation. *See, e.g., Perry v. American Home Products Corp.*, 1997 U.S. Dist. LEXIS 2521 at *20 (E.D. Va. 1997) ("Perry relies solely on the broad 'safety, health, and general welfare' language [of the Virginia Human Rights Act] which states no specific public policy with respect to the

particular circumstances of Perry's discharge."); *Ludwick v. Premier Bank North, Inc.*, 935 F. Supp. 801 (W.D. Va. 1996), *aff'd*, 1997 U.S. App. LEXIS 23702 (4th Cir. 1997) (general policy statements in statutes are insufficient to support a wrongful discharge claim). Plaintiff cannot state a cause of action based on § 32.1-2 of the Code.

Third, plaintiff relies on Va. Code § 54.1-2906 and its obligation for hospital administrators to report unethical and unprofessional conduct. This statute does not require that nurses complain internally about the patient care practices of their co-workers or supervisors. Nothing she did or may have failed to do would have subjected her to any penalty under this code section. Plaintiff has once again failed to allege facts sufficient for this court to find that she was discharged for acting pursuant to an official mandate. In any event, she cannot state a cause of action based upon § 54.1-2906 of the Code as the section applies to hospital administrators and not nurses.

Fourth, plaintiff cites Va. Code § 32.1-127 as authorizing the Board of Health to promulgate regulations relating to the establishment, operation, staffing, and licensing of hospitals in conformity with recognized standards of health and safety. For the same reasons cited above with regard to § 32.1-2, this general citation of the regulatory power conferred by § 32.1-127 is insufficient to support a *Bowman* claim. Plaintiff fails to cite any particular regulation enacted pursuant to this section whose policy underpinnings have been offended by defendant's actions or would have been offended by action or inaction. She cannot state a claim based upon § 32.1-127.

Fifth, Virginia Board of Nursing Regulations, Part IV, § 4.1, defines unprofessional conduct under Va. Code § 54.1-3007 to include "[a]busing, neglecting, or abandoning patients or clients." While this regulation implies that registered nurses should perform their duties in a professional and ethical manner, the disciplinary authority is imposed on the Board of Nursing. Plaintiff did not (and cannot) allege that she was fired for adhering to any obligation imposed by this Nursing Regulation, as this provision does not require Andrews to notify her employer of patient care concerns. A cause of action for wrongful termination may not be premised on this regulation or these facts.

Finally, plaintiff cites Virginia's obstruction of justice statute, Va. Code § 18.2-460, for the underlying proposition that witnesses must be protected from coercion in order to ensure the integrity of the judicial process. Andrews was a witness to the events surrounding the attempted sexual assault (a crime) and subsequent delayed reaction of the hospital staff (the possible basis for a civil suit by the victim or her family). She has provided no support for the contention that she was "a witness lawfully engaged in [her] duties as such"

when the attempted intimidation occurred. There was no ongoing criminal investigation or prosecution to be obstructed at that point. *See Fleming v. Commonwealth*, 13 Va. App. 349, 356 (1991). As the statute is inapplicable, the underlying public policy must be disregarded for purposes of this *Bowman* claim.

In sum, plaintiff has failed to state facts to support a claim that her discharge was in violation of the public policy underlying certain statutes and administrative regulations.

The demurrer is sustained on all counts. Plaintiff will be granted leave to amend in an attempt to state a cause of action based upon Va. Code § 54.1-3007 only.

December 8, 1997

*Order*

The parties appeared by counsel on the demurrer to the amended motion for judgment, and argument was heard.

There being no objection by the defendant, the plaintiff's motion for leave to further amend her motion for judgment to attempt to state a public policy argument based on Va. Code Ann. § 63.1-55.3 is granted.

The court finds that plaintiff has failed to state a cause of action based on the public policies articulated in Va. Code Ann. § 54.1-3007 or in regulations promulgated by the Virginia Board of Nursing. The demurrer is sustained as to any cause of action based on Va. Code Ann. § 54.1-3007 and regulations of the Virginia Board of Nursing, to which the plaintiff objects.

The demurrer is overruled insofar as the plaintiff's cause of action is alleged to be based on Va. Code Ann. § 63.1-55.3, to which the defendant objects.

Defendant may file any further responsive pleadings within ten days of the date of this order.