Present:  Carrico, C.J., Compton, Lacy, Hassell, Keenan, and
Koontz, JJ., and Whiting, Senior Justice

BRIDGETTE JORDAN, ET AL.
                          OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 961320              February 28, 1997

CLAY'S REST HOME, INC.

                FROM THE CIRCUIT COURT OF NOTTOWAY COUNTY
                       Thomas V. Warren, Judge


     In this action by an employee against her former employer,

we consider whether to adopt an indirect, burden shifting method

of proof in wrongful discharge cases.  We also consider whether

the trial court erred by imposing sanctions against the employee

and her attorney for filing a frivolous lawsuit.

     Appellant Bridgette Jordan filed this action against Clay's

Rest Home, Inc., an adult residential facility in Blackstone,

seeking recovery of both compensatory and punitive damages.  The

plaintiff alleged that she is a black female hired in May 1993 by

the defendant "as a full time office employee," that she

sustained "an on-the-job injury" in June 1993, and that defendant

terminated her employment in July 1993.

     In a count labelled "Wrongful Discharge - Retaliation,"

plaintiff alleged defendant "willfully and wantonly discharged"

her "because of her on-the-job injury and her filing of a claim

for compensation under the Virginia Workers' Compensation Act."

In another count labelled "Wrongful Discharge - Race

Discrimination," plaintiff alleged defendant "willfully and

wantonly discharged" her "because of her race in violation of the

public policy of Virginia . . . prohibiting race discrimination

in employment."

In a grounds of defense, the defendant denied the allegations of wrongful discharge and denied indebtedness to the plaintiff in any amount. With the grounds of defense, the defendant filed a motion for sanctions against the plaintiff and her attorney. The defendant asserted that the plaintiff evinced in the past an intent to "get" the defendant and that the filing of the action was "irresponsible." The defendant asked the court to assess a monetary penalty against the plaintiff and her counsel.

Subsequently, and following some discovery proceedings, the action was tried to a jury. At the conclusion of the plaintiff's case-in-chief, the trial court granted defendant's motion to strike the evidence upon both counts, and entered summary judgment for defendant.

Later, the court held a hearing on the sanctions motion and granted it. The court ordered the plaintiff and her attorney each to pay $5,000 to defendant "as sanctions for filing and pursuing a claim that was not well grounded in law & fact."

The plaintiff appeals from the summary judgment order. The plaintiff and her attorney, pro se, appeal from the sanctions order.

Initially, we shall address the plaintiff's action for damages. Because the trial court struck the plaintiff's evidence, the sufficiency of that evidence to sustain a recovery

is challenged.  Therefore, we shall consider the evidence, and all reasonable inferences drawn from it, in the light most favorable to the plaintiff.  Page v. Arnold, 227 Va. 74, 76, 314 S.E.2d 57, 58 (1984).

The plaintiff's case was presented through the testimony of two witnesses, the assistant administrator of defendant's facility and the plaintiff herself, as well as through a number of documents.  This evidence showed that plaintiff had been "hired" by Barbara T. Daniel, the local assistant administrator with the approval of the "owner" of the facility, who resided in Newport News.  The plaintiff first reported to work on May 5, 1993 at a wage of $5 per hour as "a new employee" on a 90-day "probationary period."  She "was hired on a part-time basis," although she worked eight-hour shifts and typically 40 hours per week.  The defendant's policy was to evaluate probationary employees' performance during and at the end of the 90-day period to determine whether the employee qualified for further employment.

The plaintiff was hired as an "office person."  Her duties included washing and ironing the residents' clothes and delivering these items to residents' rooms.  In addition, she would "check" on the residents every hour during her shift, count medicine, count money, and "[d]o a little book work."

In the course of evaluating plaintiff's performance, Daniel, without advising plaintiff, noted in plaintiff's personnel file

"a couple of instances" relating to her conduct. A file entry dated June 11, 1993 states plaintiff "made several inappropriate remarks about a male resident's back side" and plaintiff was "extremely loud and used profanity on several occasions." Daniel testified that the "bad language" had been used in the presence of residents.

On June 28, 1993, plaintiff was running up stairs in the facility and fell because of "a nail hanging out of a step," injuring her knee. Daniel knew on the day the injury occurred that plaintiff was "reporting" it as a "work claim."

On July 1, 1993, Daniel notified the plaintiff by telephone "that she should not come back to work." No reason for the discharge was given by Daniel; she advised the plaintiff that "she would get a reason from [defendant's attorney] explaining why she was being terminated." Plaintiff testified that, prior to this time, no one on behalf of defendant had warned her she was "in danger of being fired."

On August 2, 1993, defendant's attorney wrote plaintiff the following letter:

> "At the request of John H. Graham, President of Clay's Rest Home, I am advising you that your dismissal from employment was due to the following facts:
>
> 1. You were employed on a 90 day trial basis.
> 2. It became apparent that you did not or could not perform up to the standards they expect at Clay's Rest Home.
> 3. You were an employee at will and as such your employer may terminate at anytime without cause, which was done."

The evidence showed that during the time plaintiff worked for defendant, it employed approximately 22 persons at the facility. Over half of those persons were black, several of them acting in a supervisory capacity. The record also shows that during the period January 1 – December 31, 1993, 20 of defendant's 32 employees were black. Plaintiff was the only employee terminated by defendant during 1993, 1994, and 1995.

Following her discharge, the plaintiff was "replaced" by a white female. The replacement was "hired after me," according to the plaintiff. The record does not show the replacement's qualifications.

At the time of trial in January 1996, there were approximately 55 residents at the facility, of which one was black. In 1993, none of the residents was black. This situation resulted from "chance" because defendant has a nondiscriminatory admissions policy, according to the evidence.

Following plaintiff's accident, she filed a workers' compensation claim; as a result, she was awarded benefits for lost wages, medical expenses, and attorney's fees. Plaintiff testified she could not remember the date of filing the claim, and the record does not establish it.

When asked how she had been subjected to racial discrimination, the plaintiff testified "because there's no black residents there." Elaborating, the plaintiff explained: "I recall a long time ago when my mother called there and tried to

get her mother in Clay's Rest Home, but they would not accept her."  The plaintiff also testified that because Daniel, who is white, "just didn't have very much to say to" her, plaintiff felt she was a victim of discrimination.

During argument of the defendant's motion to strike, the plaintiff urged the trial court to adopt an indirect, burden shifting method of determining whether plaintiff had established a prima facie case of wrongful discharge.  Under this theory, the plaintiff argued, once an employee proves a "bare-minimum type case," the employer "would have to come forward on their case to articulate a legitimate explanation of the reason for the discharge."  Refusing to adopt the plaintiff's theory, the trial court ruled "the plaintiff has not proven a prima facie case," and struck the plaintiff's evidence on both counts.

On appeal, the plaintiff says the "fundamental issue presented in this case is whether the law of Virginia permits a plaintiff such as Jordan, who lacks direct evidence in support of her claims of wrongful discharge, to prove her claims circumstantially, pursuant to the indirect, burden shifting method of proof recognized in McDonnell Douglas [Corp. v. Green, 411 U.S. 792 (1973)] and subsequent case law."  Continuing, the plaintiff submits that this model should apply "to statutory wrongful discharge actions, such as Jordan's action under [Code] § 65.2-308" (employer shall not discharge employee solely because employee "intends to file or has filed" a workers' compensation

claim).  The plaintiff says the model should also apply to "common law wrongful discharge actions [for race and gender-based discrimination] under the principles set forth in <u>Lockhart</u> v. <u>Commonwealth Education Systems Corp.</u>, 247 Va. 98, 439 S.E.2d 328 (1994)."  The plaintiff, injecting facts on brief that have no support in the testimonial or documentary evidence presented during the jury trial, then proceeds to argue that the trial court erred in ruling she failed to prove a prima facie case.

In <u>McDonnell Douglas</u>, the Supreme Court considered "significant questions as to the proper order and nature of proof in actions under Title VII of the Civil Rights Act of 1964, . . . 42 U.S.C. § 2000e <u>et</u> <u>seq</u>."  411 U.S. 793-94.  The Court said: "The critical issue before us concerns the order and allocation of proof in a private, non-class action challenging employment discrimination."  <u>Id</u>. at 800.  In that case, an employer was charged with a violation of the Civil Rights Act for refusing to rehire a former employee who was black.

There, the Court held that a Title VII complainant "must carry the initial burden under the statute of establishing a prima facie case of racial discrimination."  This may be done, the Court said, if the employee shows "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer

continued to seek applicants from persons of complainant's qualifications." Id. at 802.

Continuing, the Court said the "burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. The Court did not attempt to detail "every matter which fairly could be recognized as a reasonable basis for a refusal to hire." Id. at 802-03. The Court did, however, rule that the employer's showing that the employee participated in wrongful conduct against it sufficed to discharge the employer's "burden of proof at this stage" and to meet the employee's prima facie case of discrimination. Id. at 803.

In Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981), the Supreme Court again addressed "the nature of the evidentiary burden placed upon the defendant in an employment discrimination suit" brought under the Civil Rights Act. Id. at 249-50. That case involved a refusal to promote and a subsequent decision by the employer to terminate an employee allegedly based on gender discrimination in violation of Title VII. Id. at 251. There, the Court summarized the McDonnell Douglas "basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment." Id. at 252.

Again, in United States Postal Service Board of Governors v. Aikens, 460 U.S. 711 (1983), the Court applied the McDonnell Douglas framework in a Title VII action brought by a black postal

service worker who claimed his employer had discriminatorily refused to promote him to a higher position.  And, more recently, in St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993), a Title VII action by a black employee who charged his employer with demoting him and then discharging him because of his race, the Court summarized McDonnell Douglas, Burdine, and Aikens.

From these decisions, and citing state-court decisions adopting the McDonnell Douglas rationale, the plaintiff in the present case fashions four elements that she says Virginia should embrace when a plaintiff alleges wrongful discharge based on race.  According to the argument, a "plaintiff may establish a prima facie case sufficient to shift the burden of production to the defendant" if the plaintiff establishes by a preponderance of the evidence:  (1) that "the plaintiff was black"; (2) that "the defendant discharged the plaintiff from employment"; (3) that "the plaintiff was satisfactorily performing the job," that is, she "was qualified for the job"; and (4) that "the plaintiff was replaced with a white employee."

Given the Commonwealth's strong commitment to the employment-at-will doctrine, and because we conclude that Virginia's procedural and evidentiary framework for establishing a prima facie case is entirely appropriate for trial of wrongful discharge cases, we reject plaintiff's invitation to adopt the McDonnell Douglas indirect, burden shifting idea.  The McDonnell Douglas outline, refined in later cases, was adopted by the

Supreme Court in the context of Title VII actions under the federal Civil Rights Act. There was no focus, as here, on the employment-at-will doctrine. Indeed, in none of the Supreme Court cases is there even a passing reference to the doctrine, except in Burdine where there is a mention of "traditional management prerogatives." 450 U.S. at 259.

Furthermore, Virginia law is settled that in trial of civil actions generally, and in the trial of wrongful discharge cases specifically, a plaintiff may prove a prima facie case by circumstantial as well as direct evidence. See Charlton v. Craddock-Terry Shoe Corp., 235 Va. 485, 490, 369 S.E.2d 175, 177-78 (1988). Thus, there is no necessity for the Commonwealth to provide a special framework for trial of wrongful discharge cases.

And, contrary to plaintiff's contention, the fact that Virginia uses a burden shifting procedure relating to jury selection when there is a constitutional claim of racial discrimination does not prompt us to embrace such a method here. See Buck v. Commonwealth, 247 Va. 449, 450-51, 443 S.E.2d 414, 415 (1994); Barksdale v. Commonwealth, 17 Va. App. 456, 459, 460 n.3, 438 S.E.2d 761, 763, 764 n.3 (1993).

Therefore, applying conventional procedural principles, we must determine whether the plaintiff presented evidence sufficient to survive a motion to strike. We agree with the plaintiff's statement on brief that, given the rejection of the

indirect, burden shifting method of proof, she cannot "prevail in this action, as she lacked direct evidence of wrongful discharge." We accept that concession, but add that the plaintiff also lacked circumstantial evidence of wrongful discharge.

First, we address the question whether there is circumstantial evidence to establish, prima facie, the retaliatory discharge count. As we have noted, Code § 65.2-308(A) provides, as pertinent, that no employer "shall discharge an employee solely because the employee intends to file or has filed" a workers' compensation claim. The record is devoid of evidence that plaintiff was fired because she had "filed" a claim. We do not know from the evidence when the plaintiff's claim was filed; if, as the record seems to indicate, the claim was filed weeks or months after she was discharged, then, under this evidence, the discharge could not have been proximately related to the filing.

Moreover, the circumstantial evidence is insufficient to establish, prima facie, that plaintiff was fired "solely" because she intended to file a claim. The evidence merely shows the date of injury, that plaintiff thought she had been performing her duties satisfactorily, that supervisor Daniel then knew plaintiff was "reporting" the injury as work-related, and that plaintiff was discharged three days later. Every employee injured in an accident arising out of and in the course of her employment

- 11 -

presumably will make a claim for compensation benefits.  So the timing of these events and the employer's knowledge that the employee was "reporting" the injury, without more, does not raise an inference that the plaintiff was fired solely because she intended to file a workers' compensation claim.  Otherwise, a question of fact on this issue would arise in every case merely upon proof that an employee had been fired after a work-related injury.  We refuse to establish such a precedent.

Second, we address the question whether there is circumstantial evidence sufficient to establish, prima facie, the race discrimination count.  We hold there is not.

The evidence shows that the plaintiff is black; that her white supervisor "just didn't have very much to say to" her; that "a long time ago" plaintiff's grandmother was refused admission to defendant's facility for some unknown reason; that plaintiff was discharged; and, that a white female with unknown qualifications, who was hired after the plaintiff had been employed, "replaced" her.  And, the race of the facility's various residents is irrelevant, particularly in view of the fact that a majority of defendant's employees were of the same race as plaintiff.  This evidence is utterly insufficient to prove, prima facie, that defendant intentionally discriminated against plaintiff on the basis of race.

Finally, we address the correctness of the sanctions order.  As pertinent, Code § 8.01-271.1 provides that the signature of

an attorney on a pleading constitutes the attorney's certificate that "to the best of his knowledge, information and belief, formed after reasonable inquiry," the pleading "is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." The court, upon violation of the statute, "shall impose" upon the attorney or his client, or both, "an appropriate sanction," as specified in the statute.

On appeal, the plaintiff and her attorney contend the trial court erred in finding that they lacked a reasonable basis for the filing of the motion for judgment. Elaborating, they "submit that their mistake in believing that Jordan could try her wrongful discharge claims on the basis of the <u>McDonnell Douglas</u> model was reasonable and a good faith argument." They contend that in a case like this "of first impression under Virginia law," they should be permitted to argue "in support of the adoption of a method of proof set forth in more than 20 years of case law in the United States Supreme Court . . . without running an unacceptable risk of being found in violation of § 8.01-271.1." They contend that no violation of the statute was shown. We agree.

In considering whether an attorney's conduct violates the foregoing provisions of § 8.01-271.1, "we apply an objective standard of reasonableness" in order to determine whether the trial court abused its discretion in imposing sanctions. <u>Nedrich</u>

v. Jones, 245 Va. 465, 471-72, 429 S.E.2d 201, 204 (1993). Thus, we must determine whether, after reasonable inquiry, the attorney could have formed a belief that the motion for judgment was warranted by a good faith argument for modification of existing law.

Our research has disclosed that appellate courts in at least 20 states have adopted the McDonnell Douglas framework. It has been discussed in employment-law treatises. One author labels it a "popular paradigm." 2 Henry H. Perritt, Jr., Employee Dismissal Law and Practice § 7.22, at 98 (3d ed. 1992). Thus, we believe the plaintiff and her attorney could have formed a belief, after reasonable inquiry, that the motion for judgment was warranted by a good faith argument for modification of existing law. Accordingly, we hold the trial court abused its discretion in imposing sanctions.

Consequently, the order entering summary judgment on the merits of the plaintiff's action will be affirmed, the order assessing sanctions against the plaintiff and her attorney will be reversed, and final judgment will be entered here.

Affirmed in part,
reversed in part,
and final judgment.

JUSTICE HASSELL, with whom JUSTICE LACY and JUSTICE KEENAN join, concurring.

I do not join the majority's opinion for three significant reasons. First and foremost, the majority seems to suggest that

- 14 -

Virginia's strong adherence to the employment-at-will doctrine is more important than Virginia's strong public policy which prohibits gender and/or racial discrimination in the work place. Such a suggestion is inconsistent with precedent of this Court. We have already determined that termination of employment based on racial discrimination violates clear state policy against such discrimination and gives rise to a cause of action for wrongful discharge, notwithstanding the employment-at-will doctrine. Lockhart v. Commonwealth Education Systems, 247 Va. 98, 439 S.E.2d 328 (1994).

Second, I disagree with the majority's opinion because I do not believe that this is an appropriate case to decide whether Virginia should accept or reject the indirect burden shifting method of proof recognized in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Here, the plaintiff's evidence of racial discrimination was so deficient that she would not have been able to establish a viable cause of action under any recognized burden of proof. Additionally, even though the majority says that when the McDonnell Douglas principles were enunciated, "[t]here was no focus . . . on the employment-at-will doctrine," the majority neglects to acknowledge that the McDonnell Douglas burden of proof principles are applied by federal trial and appellate courts in Virginia. See Fuller v. Phipps, 67 F.3d 1137, 1141-42 (4th Cir. 1995). I believe that there may be instances where the application of the McDonnell Douglas principles may be proper,

and I would reserve that determination for another day.

Finally, I disagree with the majority's conclusion that a retaliatory discharge claim under Code § 65.2-308 is insufficient, as a matter of law, if a plaintiff alleges only that she incurred a job-related injury and was discharged after notifying her employer that she intended to file a workers' compensation claim. Although the plaintiff here failed to establish a prima facie case of retaliatory discharge, the factual allegations and evidence in any other case are not before this Court. The sufficiency of the evidence of each case must be reviewed on its own merit, and I believe that the majority's placement of a blanket restriction on future cases is inappropriate.