PRESENT: All the Justices

DONALD P. SHAW

v.  Record No. 971921    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        April 17, 1998
TITAN CORPORATION, ET AL.

UPON QUESTIONS OF LAW CERTIFIED BY THE UNITED
STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

Under the provisions of Rule 5:42, the United States Court of Appeals for the Fourth Circuit certified to this Court two questions of Virginia law. The first question concerns the adequacy of jury instructions given on the issue of causation in a common law action for wrongful termination of employment. The second question involves the availability of punitive damages in such an action. The facts as stated in the certification order are set forth below.

Donald P. Shaw, a Caucasian male, was employed by Titan Corporation (Titan), a "government contracting" firm, from 1987 until March 1994, when Titan terminated Shaw's employment. Shaw was 62 years old at the time of his discharge.

Early in 1994, Titan concluded that it would have to reduce its workforce to remain profitable. To accomplish this "reduction-in-force" (RIF), Titan created a committee (the Committee) that established criteria to evaluate Titan's employees for the purpose of identifying which employees should be discharged.

During its evaluation process, the Committee considered Titan's status under prior "conciliation agreements" with the Office of Federal Contract Compliance and Programs (OFCCP), which had determined that Titan had a significant "under-representation" of women and minority employees. Some Committee members expressed concern that a disproportionate number of women and minority employees were being "targeted" for discharge in the pending workforce reduction. Albert E. Knauf, Jr., president of Titan's eastern division, asked a Committee member "if the mix changed, what the impact of that change would be. For example, if we had another white male in the mix, what would be the numbers or our representation?" Later, a company memorandum analyzed the impact of "identify[ing] a 'sacrificial lamb'" Caucasian male, and concluded that "our representation [of women and minority employees] is so low that we still have a disparity. . . . [W]e are 'damned if we do and damned if we don't.'"

In March 1994, Richard Leadbetter, Shaw's supervisor, informed Shaw that his employment would be terminated the next day. When Shaw asked why he was being discharged, Leadbetter responded that the RIF process had failed to perform properly. John Eddlemon, an officer of Titan, terminated Shaw's employment the following day and offered Shaw "a world class corporate apology for the way that [the termination] was handled in your

case." Eddlemon also told Shaw that "the company is really vulnerable. . . . [W]e are letting go 10 to 1 women and minorities and we have to have an ace to throw on the pile." Another Titan employee was told that Titan chose Shaw as the "ace on the pile" because of Shaw's age.

In April 1995, Shaw filed a motion for judgment against Titan and Eddlemon (Titan) in the Circuit Court of Fairfax County alleging that Titan wrongfully terminated Shaw's employment. Shaw alleged that he was terminated from his employment because of his race, gender, and age in violation of the public policy embodied in the Virginia Human Rights Act, Code §§ 2.10-714 through -725. Titan removed the case to the United States District Court for the Eastern District of Virginia based on diversity of citizenship, and the case was tried before a jury. At trial, Titan maintained that Shaw's employment was terminated lawfully based on the RIF.

In the course of the proceeding, Titan requested that the jury be given the following instructions:

DEFENDANT'S REQUESTED INSTRUCTION NO. 17

If you find that Titan discriminated against plaintiff because of his age, sex, and/or race, you must nonetheless return a verdict for Titan on plaintiff's wrongful discharge claim unless you find that such discrimination was the only reason Titan selected plaintiff for discharge. In other words, if you find that Titan terminated plaintiff only because of his age, his sex, or his race, you must return a verdict for the plaintiff. However, if you find that

3

Titan's reasons for discharging plaintiff included a legitimate, nondiscriminatory reason, you must return a verdict for Titan.

### DEFENDANT'S REQUESTED INSTRUCTION NO. 18

If you find that Titan discriminated against plaintiff because of his age, sex, and/or race, you must nonetheless return a verdict for Titan on plaintiff's wrongful discharge claim unless you find that such discrimination was the determining factor in Titan's selection of plaintiff for discharge. In other words, if you find that Titan would not have terminated plaintiff but for his age, his sex, or his race, you must return a verdict for the plaintiff. However, if you find that Titan's reasons for discharging plaintiff included a legitimate, nondiscriminatory reason, you must return a verdict for Titan.

The district court refused the above instructions and

charged the jury as follows:

Titan claims that Mr. Shaw was fired because it determined that there wasn't sufficient work for which Mr. Shaw was the appropriate employee and that Mr. Shaw was, for that reason, included in the reduction in force. It is not illegal to include an employee in a reduction in force for that reason.

Merely firing an employee or including an employee in a reduction in force for non-discriminatory reasons is not against the public policy of Virginia

. . . .

The question before you is what motivated the termination of Mr. Shaw's employment or his inclusion in the reduction in force.

If you find by a preponderance of the evidence that Titan intentionally terminated Mr. Shaw's employment or included him in the reduction in force because of his race, because of his gender, because of his age, or because [of] any combination of those factors, then you shall return your verdict in favor of Mr. Shaw

4

. . . .

> If, on the other hand, you do not find by a preponderance of the evidence that Titan intentionally terminated Mr. Shaw's employment because of his race, because of his gender, because of his age, or because of a combination of those factors, then you shall return your verdict in favor of Titan.

The jury returned a verdict in favor of Shaw, awarding $65,000 in compensatory damages and $400,000 in punitive damages.[1]

After the verdict, Titan filed a "motion for judgment as a matter of law" and a motion for a new trial, under Rules 50(b) and 59 of the Federal Rules of Civil Procedure. Titan argued that because it had produced evidence that Shaw's employment was terminated as a result of the RIF, the district court erred in refusing to instruct the jury in accordance with Defendant's Requested Instruction Nos. 17 and 18. Titan also asserted that the public policy of Virginia does not permit the award of punitive damages in actions for wrongful termination of employment. The district court denied these post-trial motions and Titan appealed the judgment to the United States Court of Appeals for the Fourth Circuit.

Following Titan's appeal, the certifying court presented the following questions to this Court:

---

[1] The district court later reduced the punitive damages award to $350,000 to comply with Virginia's statutory limit on recovery of punitive damages. See Code § 8.01-38.1.

5

1.  Whether, under the common law of Virginia, the district court erred in refusing to give the jury an explicit but-for causation, sole-cause, or mixed-motive instruction, and instead instructing the jury that it could find for Shaw on his claim of wrongful termination in violation of public policy if Shaw proved by a preponderance of the evidence, "that Titan terminated him because of his race, his gender, his age, or because of a combination of those factors."

2.  Whether, under the common law of Virginia, punitive damages may be recovered for wrongful termination in violation of public policy, where the public policy violated is embodied in the Virginia Human Rights Act which expressly prohibits the award of punitive damages.

Titan argues before this Court that since Shaw's action sounded in tort, the district court was required to give the jury an explicit instruction under either a "but-for" causation standard or a "sole" causation standard.  Titan also asserts that the district court erred in permitting Shaw to recover punitive damages because the Virginia Human Rights Act presently prohibits awards of punitive damages in actions brought under its provisions, and no other Virginia statute specifically authorizes the recovery of such damages in wrongful termination actions.  We disagree with Titan's arguments.

The first certified question effectively asks whether, as a matter of law, the district court was required to give the jury explicit instructions addressing a "sole" causation standard, a "but-for" causation standard, or a "mixed motive" causation standard.  We conclude that the district court did not err in failing to give such instructions.

6

As stated above, the district court told the jury it was required to find in favor of Shaw if he proved by a preponderance of the evidence that Titan intentionally terminated his employment because of his race, gender, age, or a combination of these factors. However, the court also instructed the jury that if Titan fired Shaw for non-discriminatory reasons, even if Titan used a flawed process or made a wrong decision, the jury was required to return a verdict in favor of Titan. These instructions, considered in the context of all the instructions in the record before us, fully and fairly stated the common law of Virginia in effect on the date Shaw's cause of action accrued.

In Bowman v. State Bank of Keysville, 229 Va. 534, 539-40, 331 S.E.2d 797, 800-01 (1985), we recognized a common law cause of action in tort for wrongful termination of employment under an exception to the common-law doctrine of employment-at-will. This exception applies to terminations from employment which violate the public policy of this Commonwealth. Bradick v. Grumman Data Sys. Corp., 254 Va. 156, 159, 486 S.E.2d 545, 546 (1997); see Bailey v. Scott-Gallaher, Inc., 253 Va. 121, 125, 480 S.E.2d 502, 504 (1997); Lawrence Chrysler Plymouth Corp. v. Brooks, 251 Va. 94, 98-99, 465 S.E.2d 806, 809 (1996); Miller v. SEVAMP, Inc., 234 Va. 462, 468, 362 S.E.2d 915, 918 (1987).

We have held that this exception to the employment-at-will doctrine is applicable, among other instances, when an employee is terminated from employment "because of discrimination based upon gender or race." Lockhart v. Commonwealth Educ. Systems Corp., 247 Va. 98, 106, 439 S.E.2d 328, 332 (1994)(emphasis supplied); see Bailey, 253 Va. at 126-27, 480 S.E.2d at 505; Lawrence, 251 Va. at 98, 465 S.E.2d at 809. Using equivalent language, we also have held that based on the exception recognized in Bowman, the common law of Virginia provides an employee a remedy for wrongful termination from employment when "the employee is discharged on account of his disability or the employer's perception of his disability." Bradick, 254 Va. at 160-61, 486 S.E.2d at 547 (emphasis supplied).

These holdings require a plaintiff who asserts a cause of action for wrongful termination under Bowman to prove that the discharge occurred because of factors that violate Virginia's public policy. A plaintiff is not required to prove that the employer's improper motive was the sole cause of the wrongful termination.

In asserting a contrary position, Titan mistakenly relies on Bailey v. Scott-Gallaher, Inc., 253 Va. 121, 480 S.E.2d 502 and Jordan v. Clay's Rest Home, Inc., 253 Va. 185, 483 S.E.2d 203 (1997). In Bailey, our inquiry was limited to determining whether an employee stated a cause of action for wrongful

8

termination based on allegations of gender discrimination.  We stated that the employee's allegations, if true, "would support a reasonable inference by the finder of fact that [the employer] terminated [the employee] solely because of her status as a working mother."  253 Va. at 126-27, 480 S.E.2d at 505.

Since the issue before us in Bailey was whether the trial court properly sustained the defendant's demurrer, our conclusion addressed only the content of the employee's pleadings and did not establish a requirement that an employee prove that a discriminatory motive was the sole cause of the termination.  We also stated in Bailey that the employee's allegations, if proved, "could support a jury finding that [the employee] was discriminated against because of her gender."  253 Va. at 126, 480 S.E.2d at 505 (emphasis supplied).  This language reiterates the standard of causation set forth in Lockhart.  See 247 Va. at 106, 439 S.E.2d at 332.

Our decision in Jordan also fails to support Titan's position.  There, in deciding whether a plaintiff presented prima facie evidence to establish that she was fired "solely" because she intended to file a workers' compensation claim, our determination was governed by the language of Code § 65.2-308.  253 Va. at 193, 483 S.E.2d at 207.  This statute specifically forbids an employer from discharging an employee "solely because

9

the employee intends to file or has filed" a workers' compensation claim.  Code § 65.2-308(A).

The language in Jordan cited by Titan is inapplicable here because that discussion pertains to the statutory cause of action under Code § 65.2-308, not to a common law claim of wrongful termination.  Thus, we conclude that the district court did not err in refusing to give the jury an explicit "sole-cause" instruction.

Titan also contends that the district court erred in refusing to instruct the jury under the "but-for" analysis set forth in Wells v. Whitaker, 207 Va. 616, 151 S.E.2d 422 (1966). We stated in Wells that, "[g]enerally a person is not liable to another [in tort] unless but for his . . . act the harm would not have occurred."  207 Va. at 622, 151 S.E.2d at 428.

We first observe that Titan failed to offer a jury instruction that properly stated a proximate causation standard under the "but for" language of Wells.  Titan's requested Instruction No. 18 improperly required the jury to return a verdict for Titan if the jury found that "Titan's reasons for discharging [Shaw] included a legitimate, non-discriminatory reason."  This directive was an incorrect statement of Virginia law, because that language would have required Shaw to prove that he was fired solely because of a discriminatory reason.

10

We also conclude that the district court's instructions in the present case incorporated Virginia's common law standard of proximate causation by requiring Shaw to prove that he was discharged because of his race, gender, age, or any combination of these factors, rather than because of any non-discriminatory reasons. Thus, we conclude that the common law of Virginia did not require the district court to give the jury an explicit instruction setting forth the "but for" language of Wells.

We also note that the common law of Virginia has not presently adopted the "mixed motive" causation standard applicable to claims for wrongful termination of employment brought under the Civil Rights Act of 1964 §§ 701 et seq., 42 U.S.C. §§ 2000e et seq. (1994). Further, Titan did not argue that Shaw's discharge was based on a "mixed motive." Therefore, we conclude that the district court did not err in failing to give the jury an explicit instruction on this principle.[2] For these reasons, we answer the first certified question in the negative.

We next consider the question whether the common law of Virginia permitted Shaw to recover punitive damages from Titan for the wrongful termination of his employment. Initially, we

---

[2] In light of the conclusion we reach here, we need not consider whether Virginia would adopt the "mixed motive" causation standard applicable to Title VII claims.

note that Shaw was terminated from his employment and filed this action against Titan before the 1995 amendments to the Virginia Human Rights Act became effective.  Thus, when Shaw's cause of action against Titan arose, the Virginia Human Rights Act did not contain any language limiting a plaintiff's right to recover punitive damages in an action for wrongful termination of employment.[3]

Titan argues, nevertheless, that Shaw was not entitled to recover punitive damages because neither the Virginia Human Rights Act nor any other Virginia statute specifically authorized the recovery of such damages at the time Shaw was discharged and filed this action.  We find no merit in this argument because the cause of action for wrongful termination of employment asserted by Shaw derives solely from the common law. Bowman, 229 Va. at 539-40, 331 S.E.2d at 800-01; see Bradick, 254 Va. at 159, 486 S.E.2d at 546; Bailey, 253 Va. at 125, 480 S.E.2d at 504; Lockhart, 247 Va. at 105, 439 S.E.2d at 331.

As we stated in Bowman, the common law cause of action for wrongful termination of employment sounds in tort.  229 Va. at 540, 331 S.E.2d at 801; see Bailey, 253 Va. at 125, 480 S.E.2d at 504; Lockhart, 247 Va. at 105, 439 S.E.2d at 331-32.  Titan

---

[3] Since the 1995 and 1997 amendments to the Virginia Human Rights Act became effective after this cause of action arose, we express no opinion on whether a plaintiff may recover punitive

conceded in the district court that this cause of action is an intentional tort.  When a plaintiff pleads and proves an intentional tort under the common law of Virginia, the trier of fact may award punitive damages.  Foreign Mission Bd. v. Wade, 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991); see Kamlar Corp. v. Haley, 224 Va. 699, 706-07, 299 S.E.2d 514, 518 (1983).  Thus, we conclude that, under Virginia law, Shaw was entitled to recover punitive damages in the present action, and we answer the second certified question in the affirmative.

First Certified Question Answered in the Negative.
Second Certified Question Answered in the Affirmative.

damages in any action for wrongful termination of employment asserted after the effective date of these amendments.