## CIRCUIT COURT OF FAIRFAX COUNTY

Louis Eslami

v.

Global One Communications, Inc.

January 11, 1999

Case No. (Law) 174096

BY JUDGE STANLEY P. KLEIN

This matter is before the Court on Defendant's Demurrer to Plaintiff's Amended Motion for Judgment. On November 2, 1998, Plaintiff, Louis Eslami, filed a seven count Amended Motion for Judgment. Defendant, Global One Communications, Inc. ("Global") has demurred to the following counts: Count II, Violation of Virginia's Wage and Hour Law; Count III, Violation of Public Policy; Count V, Intentional Interference with Prospective Contract; Count VI, Defamation; Count VII, Punitive Damages. For the reasons set forth herein, the Court sustains the Demurrer to Counts II, III, and VII, and overrules the Demurrer to Counts V and VI.

### I. *Facts*

This action arises out of a dispute over the termination of an employment contract between Eslami and Global. Eslami alleges that on January 13, 1997, he entered into a two-year written employment agreement ("the Agreement") with Global under which he was hired as Country Manager for Global's

Malaysian business concerns. Eslami further alleges that on January 17, 1998, Global terminated his employment in contravention of the terms of the Agreement. Eslami states that after being terminated, he was not timely compensated for work performed prior to termination. Eslami also asserts that subsequent to his termination from Global, he sought work from other employers and that these employers contacted Global in an effort to obtain personal references. In particular, Eslami alleges that he had a valid business expectancy with one Teleglobe International ("Teleglobe"). In providing references to Teleglobe and other prospective employers, Eslami contends that Global defamed Eslami and intentionally interfered with his prospective contract by stating that Eslami "lost his temper" and that he "just did not fit in."

## II. *Analysis*

### A. *Count II, Violation of Virginia's Wage and Hour Law*

Virginia Code § 40.1-29, commonly known as the Virginia Wage and Hour Law ("the Act") sets forth the duties of employers relating to payment of wages and salaries. Section 40.1-29 further provides specific procedures for the enforcement of the Act's provisions. Subsection 2 outlines procedures to be followed by the Commissioner of Labor and Industry ("the Commissioner") in addressing and remedying a violation of the Act's provisions and states:

> The Commissioner may require a written complaint of the violation of this section and, with the written consent of the employee, may institute proceedings on behalf of the employee to enforce compliance with this section, and to collect any moneys unlawfully withheld from such employee which shall be paid to the employee entitled thereto.

Virginia Code § 40.1-29.2(F) (1950, as amended, 1993).

Count II of Eslami's Amended Motion for Judgment purports to state a claim for a violation of the Act premised on Global's failure to timely compensate Eslami after terminating him. Global has demurred, asserting that the Act does not afford a private right of action, and, as a result, Eslami lacks standing to bring this claim. Eslami responds that the absence of statutory language specifically permitting a private right of action does not preclude a claim for private enforcement of the Act.

In Virginia, well-settled principles of statutory construction dictate that "where a statute creates a right and provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise." *School Board v. Giannoutsos*, 238 Va. 144, 147 (1989). *See, also, Vansant and Gusler, Inc. v. Washington*, 145 Va. 356 (1993) (relying on *Giannoutsos* and ruling that private right of action for imposing civil liability may not be implied in the language of a statute). Virginia Code § 40.1-29 afford employees the right to submit grievances concerning wage and hour disputes to the Commissioner and provides that the *Commissioner*, with the consent of the aggrieved employee, may institute an action to remedy violations of the Act's provisions. The absence of statutory language expressly providing for a private right of action to enforce the Act's provisions establishes that the remedy provided by the Act is exclusive. Therefore, Eslami lacks standing to assert a claim for violation of the Act. Accordingly, the Demurrer to Count II is sustained and that count is dismissed.

## B. *Count III, Violation of Public Policy*

Virginia law has long adhered to the doctrine of employment-at-will. *See, Stonega Coal and Coke Co. v. Louisville and Nashville RR. Co.*, 106 Va. 223, 226 (1906). The doctrine of employment-at-will is not, however, an absolute bar to causes of action in tort arising from termination of employment. *See, Bowman v. State Bank of Keysville*, 229 Va. 534, 539-40 (1985). A narrow exception to the rule permits a common-law cause of action in tort for wrongful termination of employment when the grounds for termination offend public policy. *See, e.g., Shaw v. Titan Corp.*, 255 Va. 535, 542 (1998) (citing *Bowman*, 229 Va. at 539).

Public policy is defined in Virginia case law as "the policy underlying existing laws designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general." *Doss v. Jamco*, 254 Va. 362, 366-67 (1997) (citations omitted). The cause of action arises, however, "not from the statute or statutes relied on by the employee, but from the narrow exception within the common-law recognized in *Bowman*." *Bradick v. Grumman Data Systems Corp.*, 254 Va. 156, 159 (1997). Thus, employees have successfully pleaded causes of action in tort for wrongful termination based on violations of Virginia public policies embodied in duly-enacted laws. *See, Bowman*, 229 Va. at 540 (recognizing cause of action for wrongful termination based on violation of Code § 13.1-32 embodying Commonwealth's public policy in favor of stockholders' right to vote shares

free of duress and intimidation); *Lockhart v. Commonwealth Educ. Systems Corp.*, 247 Va. 98, 105 (1994) (allowing cause of action based upon violation of Virginia public policy against race and gender discrimination embodied in Virginia Human Rights Act); *Bailey v. Scott-Gallaher*, 253 Va. 121, 125 (1997) (recognizing public policy against gender discrimination set forth in Virginia Human Rights Act; *Bradick*, 254 Va. at 161 (recognizing cause of action based on violation of Virginia public policy against discrimination based on disability as expressed in Virginians with Disabilities Act).[1]

Eslami premises his claim under Count III on Global's alleged failure to timely compensate him *following* his termination. Specifically, Eslami contends that Virginia Code § 40.1-29 reflects the Commonwealth's public policy. As such, he contends that a violation of that code provision amounts to a violation of public policy which would support a wrongful discharge claim. Global responds that Virginia law requires that the termination, itself, must violate public policy before the Bowman doctrine will give rise to a cause of action.

Global's position is sound. In *Bowman*, the Virginia Supreme Court's inquiry focused on whether the retaliatory *discharge* of certain bank employees would allow a cause of action in tort for wrongful termination in light of the doctrine of employment-at-will. In ruling that the plaintiffs had pleaded a viable cause of action premised upon a public policy exception to the rule favoring employment-at-will, the Court recognized that the exception was "narrow" and applies to "improper *discharge* from employment." *Bowman*, 229 Va. at 540 (emphasis added).

Nothing in *Bowman* or subsequent case law interpreting the Bowman doctrine suggests that an employer's action or inaction in the post-termination period, wholly unrelated to the reason for discharge, could give rise to a cause of action for wrongful discharge. Moreover, as the *Bradick* opinion makes clear, the cause of action arises not from the statute itself but from the public policy underlying the statute. Assuming, *arguendo*, that the public policy underlying § 40.1-29 is aimed at safeguarding the property rights and general welfare of employees within the Commonwealth, there is no causal connection alleged or inferable in Count III of Plaintiff's Motion for Judgment between the basis for Plaintiff's discharge and any public policy underlying the statute.

---

[1] In 1997, the Virginia Supreme Court declared that the Virginia Human Rights Act, Va. Code § 2.1-714 *et seq.* precludes common law causes of action for wrongful termination predicated by discrimination based upon the race, religion, national origin, sex, age, marital status, or disability. *See, Doss*, 254 Va. at 367.

Indeed, Eslami does not contend that he was wrongfully terminated by Global in an effort to withhold timely payment of compensation owed him. The Demurrer to Count III is, therefore, sustained and that count is dismissed without leave to file a Second Amended Motion for Judgment.

Eslami has asked the Court for leave to file a Second Amended Motion for Judgment to include a claim for Violation of Public Policy as expressed in Virginia Code § 40.1-27. That section prohibits former employers from willfully or maliciously preventing their former employees from obtaining subsequent employment. The Court denies this request, as any such claim would suffer from the same infirmity as the claim attempted in Count III.

## C. *Defamation*

### 1. *General Principles*

Global sets forth four bases in support of its contention that Count VI fails to adequately set forth a claim for defamation. First, Global contends that Eslami has failed to plead defamation with particularity, as required by Virginia law. Second, Global argues that the alleged defamatory words cannot as a matter of Virginia law support a cause of action for defamation. Third, Global contends that the alleged defamatory statements are not, as a matter of Virginia law, actionable as defamation because they represent no more than an expression of opinion. Finally, Global asserts that the alleged defamatory statements are protected by a qualified privilege, immunizing Global from liability in tort.

In Virginia, as elsewhere, the law of defamation has developed both in conjunction with, and in response to, various decisions of the United States Supreme Court which have considered the interplay of state laws regarding defamation and constitutionally-protected free speech. *See, generally, Gazette v. Harris*, 229 Va. 1, 8-13 (1985). In general, defamation consists of the publication of an injurious falsehood. *See, id.* Unlike other jurisdictions, Virginia makes no distinction between slander (spoken words) and libel (written words) in actions for common law defamation. *See, Fleming v. Moore*, 221 Va. 884, 889 (1981).

Virginia recognizes two general varieties of defamation. Words which are defamatory *per se* are those words which (1) impute the commission of a criminal offense involving moral turpitude; (2) impute infection of a contagious disease, (3) impute unfitness to perform the offices or duties of employment or lack of integrity in the discharge of those duties; or (4)

prejudice a person in his or her profession or trade. *See, e.g., Fleming,* 221 Va. at 889 (citations omitted). Words or statements which are not *per se* defamatory may nonetheless be actionable based on the context in which they were uttered. *See, Fleming,* 221 Va. at 889 (1981) (explaining that words which do not rise to level of *per se* defamation are actionable and require proof of special damages); *Luhring v. Carter,* 193 Va. 529, 536-37 (1952) (recognizing legal distinction between words which are *per se* defamatory and those which are "actionable because of extrinsic facts").

## 2. *Particularity of Pleading*

Global asserts that defamation has been improperly pleaded by virtue of Eslami's failure to identify the speaker of the alleged defamatory statements, the person to whom they were allegedly spoken, and the time and place at which the statements were made. In support of this contention, Global relies on *Federal Land Bank v. Birchfield,* 173 Va. 200 (1939). Global's reliance on this case is misplaced. In *Birchfield,* the Virginia Supreme Court focused on the necessity to plead the exact words which constitute the basis of an action for defamation. *See, id.,* at 215-17 (explaining that proper pleading requires that defamatory words be set forth *in haec verba*). In paragraph 61 of the Amended Motion for Judgment, Eslami sets forth the exact words which allegedly defamed him. In *Food Lion v. Melton,* 250 Va. 144, 151 (1995), the Virginia Supreme Court addressed the issue of particularity in proving publication as an essential element of a claim for defamation and ruled that:

> in order to establish *prima facie* evidence of publication, a plaintiff is not required to present testimony from a third party regarding what that person heard and understood, *or to identify the person to whom the defamatory words were published.* Instead, a plaintiff may prove publication of defamatory remarks by either direct or circumstantial evidence that the remarks were heard by a third party who understood these remarks as referring to the plaintiff in a defamatory sense.

*Food Lion, Inc.,* 250 Va. at 151 (emphasis added). In light of the foregoing and the Virginia Supreme Court's ruling in *CaterCorp v. Catering Concepts, Inc.,* 246 Va. 22, 24 (1993), that as long as a pleading contains sufficient allegations of material facts to inform the defendant of the nature of the claim, it is not necessary for the pleader to recite detailed facts as proof of his claim,

lack of particularity, as asserted by Global, does not provide a proper basis on which to sustain a demurrer.

### 3. *Defamatory Nature of Statements Alleged*

Global contends that the alleged statements, namely that Eslami "did not fit in" and "lost his temper" cannot, under Virginia law, constitute defamation. Words are defamatory *per se* when they impute to the person about whom they were uttered unfitness in performing the duties of his employment and/or prejudice a person in a profession or trade. *See, e.g., Fleming,* 221 Va. at 889. In *Fleming,* the Virginia Supreme Court explained that in order for a statement alleging unfitness in one's profession to be actionable *per se,* the statement must be 'necessarily hurtful' in its effect upon plaintiff's business and must affect him in his particular trade or occupation. ...There must be a nexus between the content of the defamatory statement and the skills or character required to carry out the particular occupation of the plaintiff." *Fleming,* 221 Va. at 889.

The Court is mindful that it need not premise its ruling on whether or not the alleged defamatory statements are actionable *per se.* Nonetheless, the Court finds that the words complained of could be necessarily hurtful in their effect on Eslami in his profession.

The Court finds that the alleged statements could constitute the basis for a defamation claim. Eslami was hired in a managerial position in which he was to oversee the day-to-day running of Global's business in Malaysia. Such a position would no doubt require significant interpersonal skills in both the day-to-day management of business concerns and personnel. Count VI of the Amended Motion for Judgment alleges that Global willfully and wantonly made false statements to a potential employer and that Eslami was damaged as a result. *See, Amended Motion for Judgment,* ¶¶ 60-63. Taking all reasonable inferences in favor of the pleader, statements such as the ones alleged could have impugned his professional reputation and negatively impacted Eslami in his profession by preventing him from obtaining new employment. Accordingly, the Court overrules the Demurrer on this basis.

### 4. *Statements as Opinion Not Actionable*

Global's next assertion of the inadequacy of Eslami's defamation claim rests on the argument that the words used to allegedly defame Eslami constitute opinions and are therefore not actionable under Virginia law. In

order to be actionable as defamation, the offending words must be understood to convey a false representation of fact. *See, Yeagle v. Collegiate Times*, 255 Va. 293, 295 (1998) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 16-17 (1990)). By contrast, mere rhetorical hyperbole cannot constitute the basis for a defamation claim. *See Yeagle*, 255 Va. at 296. In *Yeagle*, the Virginia Supreme Court affirmed the ruling of the trial court sustaining a demurrer to a count for defamation based on the contention that the phrase "Director of Butt Licking" was no more than rhetorical hyperbole. In so ruling, the Court opined that "[t]he threshold issue [is] whether the complained-of phrase including inferences fairly attributable to it could reasonable be interpreted as stating actual facts about Yeagle ... inferences cannot extend beyond the ordinary and common acceptance of the statement." *Id.* at 297. Unlike the words at issue in *Yeagle*, the statements "Mr. Eslami lost his temper" and "Mr. Eslami just did not fit in" appear to be factual statements which in their ordinary meaning convey information that may have impugned Mr. Eslami's reputation as a business professional. As such, they are sufficient at this stage of these proceedings to support a defamation claim.

### 5. Qualified Privilege

Finally, Global contends that the alleged defamatory statements are not actionable under Virginia law because they were uttered in the context of an employment reference and are therefore protected by a qualified privilege. Under Virginia law, a communication, made in good faith and regarding a subject matter in which the communicator has an interest or owes a duty to one who has a corresponding interest or duty is qualifiedly privileged. *See, e.g., Smalls v. Wright*, 241 Va. 52, 54 (1991). A qualified privilege does not, however, necessarily operate as an absolute bar to liability. The privilege is lost if the plaintiff proves by clear and convincing evidence that the defamatory words were spoken with common law malice. *See, id., citing, Ellington v. Great Coastal Express*, 230 Va. 142, 154 (1985). Common law malice has been defined as "behavior actuated by motives of personal spite or ill will, independent of the occasion on which the communication was made." *Smalls*, 241 Va. at 55, *quoting, Gazette*, 229 Va. at 18. Whether or not a qualified privilege exists is a matter of law for the court to decide. *See, Smalls*, 241 Va. at 54.

Eslami's Amended Motion for Judgment alleges that the false statements were made "in violation of Virginia common law and statutes" and that they were made "willfully, wantonly, and in utter disregard for Mr. Eslami's

rights." *See, Amended Motion for Judgment,* ¶¶ 60-63. The Amended Motion for Judgment contains sufficient allegations of common law malice to withstand a claim of qualified privilege at this stage of the proceedings. Consequently, the Demurrer to Count VI must be overruled.

### D. *Counts V, Intentional Interference with Prospective Contract*

Under Virginia law, a cause of action for tortious interference with a contractual expectancy is comprised of the following elements: (1) the existence of a contractual expectancy, (2) knowledge on the part of the alleged wrongdoer of the expectancy, (3) intentional interference with the expectancy; (4) the defendant's use of improper methods to interfere with the expectancy; and (5) resulting damage to the party making the claim. *See, Maximus, Inc. v. Lockheed Information Management,* 254 Va. 408 (1997). Independently tortious conduct is recognized under Virginia law as an improper method. *See, Duggin v. Adams,* 234 Va. 221, 227-28 (1987). Independently tortious conduct is but one species of improper methods. As the Virginia Supreme Court in *Maximus* explained, actions may also be improper which are neither independently tortious nor illegal, *e.g.,* unethical conduct. *See, Maximus,* 254 Va. at 414-15.

Contrary to Global's assertion in its Demurrer, Eslami's Amended Motion for Judgment contains allegations as to each of the requisite elements of a claim for tortious interference. *See, Amended Motion for Judgment,* ¶¶ 53 (valid business expectancy), 54 (Global's knowledge thereof), 56 (intentional interference), 52 (defamation, as independently tortious conduct), and 59 (resulting damage). Accordingly, the Demurrer to Count V is overruled.

### E. *Count VII, Punitive Damages*

Count VII of the Amended Motion for Judgment purports to set forth a claim for punitive damages. Under Virginia law, punitive damages are not a cause of action, but a remedy. When the plaintiff pleads and proves an intentional tort, Virginia law permits the trier of fact to award punitive damages. *See, e.g., Shaw v. Titan Corp.,* 255 Va. 535, 545 (1998). The Demurrer to Count VII is therefore sustained, and this count is dismissed. However, Eslami is granted leave to file a Second Amended Motion for Judgment within ten days of entry of the order embodying the rulings herein, solely to add prayers for punitive damages to any surviving count.

## III. *Conclusion*

For the reasons articulated in this opinion letter, the Demurrer is sustained as to Counts II, III, and VII and overruled as to Counts V and VI.