## CIRCUIT COURT OF THE CITY OF RICHMOND

Riverside Hospital, Inc.

v.

Optima Health Plan

February 17, 2011

Case No. CL10-88

By JUDGE BEVERLY W. SNUKALS

On January 31, 2011, the Court heard arguments on the Defendant's Demurrer to the Plaintiffs' Complaints. For purposes of this motion only, and by agreement of counsel, the Court consolidates this case with the following cases currently pending: *Riverside Middle Peninsula Hospital, Inc. v. Optima Health Plan*, Case No. CL10-3242, and *Riverside Tappahannock Hospital, Inc. v. Optima Health Plan*, Case No. CL10-3243. At the hearing, the Court ruled on Counts I: Breach of Implied Contract, Unjust Enrichment, II: Breach of Implied Contract, Quantum Meruit, III: Breach of Contract, Third-Party Beneficiary and/or Assignment, and V: Breach of Implied Contract of the Complaints, with instructions for Plaintiffs' counsel to provide an order to that effect. The Court then took Count IV: Violation of Virginia Code § 38.2-4312.3(B) under advisement. For the reasons set forth below, the Court sustains the Defendant's demurrer as to Count IV.

### I. *Facts*

Plaintiffs ("Hospitals") allege that Optima Health Plan ("Optima"), a Virginia licensed Health Maintenance Organization ("HMO"), violated § 38.2-4312.3(B) of the Code of Virginia, such violation proximately causing damages to the Hospitals in the amount of $703,646.34 for services rendered to Optima members as required under the federal Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd ("EMTALA").

Under this federal statute, a hospital must provide emergency services to any individual, regardless of their insurance coverage, who presents with an emergency medical condition. *Id.* Between July 11, 2006, and July 13, 2008, the Hospitals provided EMTALA services to Optima members because either Optima referred its members to these Hospitals or Optima failed to otherwise have a system for 24-hour emergency access. Under these circumstances, the Virginia Code states:

> A health maintenance organization shall reimburse a hospital emergency facility and provider, less any applicable copayments, deductibles, or coinsurance, for medical screening and stabilization services rendered to meet the requirements of the Federal Emergency Medical Treatment and Active Labor Act (42 U.S.C. § 1395dd) and related to the condition for which the member presented in the hospital emergency facility if (i) the health maintenance organization or its designee or the member's primary care physician or its designee authorized, directed, or referred a member to use the hospital emergency facility, or (ii) the health maintenance organization fails to have a system for provision of twenty-four-hour access in accordance with subsection A above. For purposes of (i) above, a primary care physician may include a physician with whom the primary care physician has made arrangements for on-call backup coverage.

Va. Code § 38.2-4312.3(B). The Hospitals have billed Optima requesting payment for emergency services rendered to Optima members, but Optima has *not* provided any reimbursement because the Hospitals are not participating medical providers with Optima.

## II. *Standard*

A demurrer alleges that "a pleading does not state a cause of action, or . . . fails to state facts upon which the relief demanded can be granted." Va. Code Ann. § 8.01-273; see *Votsis v. Ward's Coffee Shop, Inc.*, 217 Va. 652, 654, 231 S.E.2d 236, 237 (1977). In ruling on a demurrer, the "trial court is required to consider as true all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the facts alleged." *Luckett v. Jennings*, 246 Va. 303, 307, 435 S.E.2d 400, 402 (1993). The filing of a demurrer, however, "does not admit the correctness of the pleader's conclusions of law." *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373, 374 (1988). "A demurrer will be sustained when the pleading it challenges lacks `sufficient definiteness to enable the court to find the existence of a legal basis for its judgment'."

*Mark Five Construction, Inc. v. Castle Contractors,* 274 Va. 283, 287-88, 645 S.E.2d 475, 477 (2007) (quoting *Hubbard v. Dresser, Inc.,* 271 Va. 117, 122, 624 S.E.2d 1, 4 (2006)).

### III. *Analysis*

#### A. *Implied Private Rights of Action in the Commonwealth*

It is well settled that "[when] a statute creates a right and provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise." *Vansant & Gusler, Inc. v. Washington,* 245 Va. 356, 360, 429 S.E.2d 31, 33 (1993) (quoting *School Bd. of Norfolk v. Giannoutsos,* 238 Va. 144, 147, 380 S.E.2d 647, 649 (1989) (citing *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19-20, 100 S. Ct. 242, 62 L. Ed. 2d 146 (1979))). Further, "[a] private right of action is not automatically created by a penal or regulatory statute." *Black & White Cars, Inc. v. Groome Transp.,* 247 Va. 426, 430, 442 S.E.2d 391, 394 (1994). The Commonwealth is not inclined to recognize private rights of action that have not been clearly legislated because of its regard for the state legislature as a "repository of sovereign powers, whose dispensation must in any context be strictly construed." *A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.,* 798 F.2d 669, 674 (4th Cir. 1986) (citing *Commonwealth v. County Bd. of Arlington County,* 217 Va. 558, 577, 232 S.E.2d 30, 37 (1977) ("the rule is clear that, where a power is conferred and the mode of its execution is specified, no other method may be selected; any other means would be contrary to legislative intent and, therefore, unreasonable")).

These principles have been used to foreclose litigants from pursuing private rights of action in a number of contexts including (i) teacher contract renewals, *Giannoutsos,* 238 Va. at 147 (holding the only remedy available to the teacher fired without notice was entitlement to a contract for the ensuing year as provided in the Code); (ii) materialmen and workmen seeking damages for violation of a criminal statute, *Vansant,* 245 Va. at 360; (iii) the Consumer Real Estate Protection Act, *Koschene v. Hutchinson,* 73 Va. Cir. 103, 105 (Frederick 2007) (finding no express private right of action and the only remedy contemplated by the legislature permitted licensing authorities to invoke penalties on violators of CRESPA under Va. Code § 6.1-2.27 (current version at Va. Code § 55-525.31)); (iv) the Virginia Wage and Hour Law, *Eslami v. Global One Communs., Inc.,* 48 Va. Cir. 17, 19 (Fairfax 1999) (finding the exclusive remedy limited in Va. Code § 40.1-29, which affords employees the right to submit grievances concerning wage and hour disputes to the Commissioner, who may institute an action to remedy violations of the Act's provisions); (v) the Virginia Consumer Protection Act, *Harris v. USAA Cas. Ins. Co.,* 37 Va. Cir. 553, 572-73 (Norfolk 1994) (finding plaintiff failed to identify any statute creating a private remedy of

which they can avail themselves); and (vi) the Unfair Insurance Practices Act, *A & E Supply Co.*, 798 F.2d at 674 (finding the exclusive remedy to be the system of administrative oversight with appellate judicial review established by the Code).

In this case, the only remedy contemplated in Chapter 43 of the Virginia Code, which governs HMOs, can be found in Va. Code § 38.2-4316(A)(8), which states, "The Commission may suspend or revoke any license issued to a health maintenance organization under this chapter if it finds that any of the following conditions exist. . . . The health maintenance organization has otherwise failed to substantially comply with the provisions of this chapter."

Like the exclusive administrative oversight established in similar regulatory schemes such as CRESPA, the Virginia Wage and Hour law, and the Unfair Insurance Practices Act, this Code section appears to provide suspension or revocation of HMO licenses as the only remedy available for enforcing HMO compliance with this Chapter, including the disputed statute governing reimbursement for EMTALA services.

## B. *Persuasive Authority*

Given the dearth of case law in the Commonwealth on these issues, the Court has considered the persuasive authority of other states. The Hospitals relied heavily upon *Bell v. Blue Cross of Cal.*, in which the Second Appellate District of California held that the plaintiffs had standing to pursue a private claim for violation of Cal. Health & Safety Code § 1371.4, which is the counterpart to the Virginia statute in dispute. 131 Cal. App. 4th 211, 218, 31 Cal. Rptr. 3d 688, 694 (2005). However, this holding was greatly informed by the Department of Managed Health Care's expressed support of private enforcement from its official administrative interpretation of the statute. *Id.* The Department stated that it "has consistently taken the position that a provider is free to seek redress in a court of law if he disputes a health plan's determination of the reasonable and customary value of covered services as required by section 1371.4." *Id.* The *Bell* court was also persuaded by the legislative history of this statute, which showed that the legislature contemplated the provision of more than mere guidance for the time and manner of payment of emergency charges. *Id.*, at 219-20, 31 Cal. Rptr. 3d at 694-95. In finding a private right of action, the *Bell* court noted the medical provider's duty to render emergency services without regard for a patient's insurance or ability to pay. *Id.*, at 220, 31 Cal. Rptr. 3d at 695.

In this case, however, the legislative history is sparse, and the explanatory letter of the Virginia Commissioner Insurance of the State Corporation (Compl. Ex. B), does not comment on whether a private right of action exists, Rather, it directs all HMOs to review their procedures to ensure compliance and then notify the Bureau of Insurance within sixty days

of the letter (dated June 16, 2008) of any corrective measures that will be implemented for noncompliance that is identified. Although the Hospitals likewise had a duty under EMTALA to render services without regard to a patient's insurance status or ability to pay, this duty alone provides insufficient reason to find a private right of action in the Commonwealth without even a hint of the supporting legislative and administrative intent so evident in the *Bell* case.

In *Peter F. Merkle, M.D., P.A. v. Health Options, Inc.*, Florida's Fourth District Court of Appeals found that the trial court erred in concluding that § 641.513(5) did not imply a private cause of action. 940 So. 2d 1190 (Fla. Dist. Ct. App. 2006). Notably, this statute is not part of Florida's chapter specific to HMO's but is located in its Health Services chapter stating:

> (5) Reimbursement for services pursuant to this section by a provider who does not have a contract with the health maintenance organization shall be the lesser of:
> (a) The provider's charges;
> (b) The usual and customary provider charges for similar services in the community where the services were provided; or
> (c) The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.
> Such reimbursement shall be net of any applicable copayment authorized pursuant to subsection (4).

Fla. Stat. § 641.513(5). In finding a private cause of action implied in this statute by the legislature, the *Merkle* court distinguished it from other cases in which the Florida courts had previously declined to find a private cause of action solely within its HMO chapter of regulations. In those cases, the statutes "did not purport to establish civil liability. Rather [they] merely made provision for the safety and welfare of the public by declaring certain business practices by HMOs to be unfair and deceptive and empowering the Department of Insurance to investigate and punish offenders." *Id.*, at 1196. These statutes were also "aimed specifically at protecting the public as an entity, i.e. preventing negligence, unfair and deceptive trade practices, and bad faith," whereas § 641.513(5) "is aimed at protecting non-participating providers who must provide emergency medical services to HMO subscribers, ensuring they are compensated fairly. The question is not whether the HMOs are liable under section 641.513(5), but rather what is the appropriate method for determining the extent of that liability." *Id.*, at 1197.

The HMOs then argued that the only remedies available for vindication of the provider's rights included either the pursuit of an ERISA

claim or participation in the medical alternative dispute resolution (ADR) process established by the legislature, but the *Merkle* court disagreed. *Id.* The court reasoned that the ERISA argument was not pertinent because it was never raised in the lower court and that ADR was not mandatory so as to comprise an exclusive remedy. In the absence of any other remedy, then, the Court held that a private cause of action was created by this Fla. Stat. § 641.513(5). It further justified this holding by stating that "parties have `the right to maintain a private cause of action as the persons the legislature intended to protect by the enactment' of a particular statute." *Id.* (quoting *Moyant v. Beattie*, 561 So. 2d 1319, 1320 (Fla. Dist. Ct. App. 1990)).

It is significant, however, that both these remedies and Fla. Stat. § 641.513(5) existed separately from Florida's HMO chapter of regulations, whereas the remedy contained in Va. Code § 38.2-4316 exists within Virginia's HMO chapter of regulations. Under the guidance of *Vansant & Gusler*, this remedy of suspending an HMO's license must be interpreted as the exclusive remedy for the rights created by § 38.2-4312.3(B) in the absence of language stating otherwise. Further, the Court does not find the *Merkle* justification persuasive because Virginia applies the analysis of determining whether a party is intended to be protected by a particular statute only in the context of negligence *per se* claims in order to establish the existence of a duty, but not as a private right of action in and of itself. See e.g., *Halterman v. Radisson Hotel Corp.*, 259 Va. 171, 176-77, 523 S.E.2d 823, 825-26 (2000).

## III. *Conclusion*

Therefore, in light of Virginia's strict construction of statutes and the important differences between the instant case and the cases of *Bell* and *Merkle*, the Court will sustain the demurrer to Count IV without leave to amend.